FLANAGAN AMBULANCE SERVICE, INC., ET AL. *v.* PUBLIC UTILITIES COMMISSION ET AL.

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued April 6—decided June 1, 1971

*Frank T. Healey, Jr.,* with whom, on the brief, was *James T. Healey,* for the appellants (plaintiffs).

*John K. Jepson,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (named defendant).

*Robert P. Burns,* with whom, on the brief, was *Michael J. Sullivan,* for the appellee (defendant Kennedy Medi-Car, Inc.).

THIM, J. On May 29, 1969, Kennedy Medi-Car, Inc., filed a livery application with the public utilities commission, seeking to obtain a livery permit to operate "[f]our (4) specially designed medicars . . . for the transportation of wheelchair patients, convalescents, infirm and handicapped people and elderly who fit the above categories in non-emergency service, between all points in Connecticut from a headquarters in New Haven." After published notice, a hearing was held on the application. The plaintiffs, who are operators of licensed ambulance services pursuant to General Statutes § 20-383, opposed the granting of the permit on the ground that the ambulance commission, rather than the public utilities commission, had jurisdiction over such an application. After reserving decision on the jurisdictional question, and after the hearing, the public utilities commission, on August 25, 1969, determined that it had jurisdiction, granted the application and issued the livery permit. Pursuant to § 16-35, the plaintiffs appealed to the Superior Court. That court affirmed the commission's jurisdictional decision and rendered a judgment dismissing the appeal. From the judgment rendered the plaintiffs have taken this appeal, assigning as error the conclusion that the public utilities commission had authority to grant the application.

The sole issue which we must resolve is whether the medicar is an ambulance within the contemplation of § 20-378. If it is, then only the ambulance commission could have issued the permit. If, however, the medicar is not an ambulance, then the public utilities commission has acted within its authority.

General Statutes § 20-378 defines an ambulance as "a motor vehicle specifically designed to carry

patients." A patient is defined as "an injured or ill person requiring assistance and transportation." Beyond those specific definitions we must employ the commonly approved usage of the words. General Statutes § 1-1.

While the statute and dictionary definitions do not specifically limit the meaning of "ambulance" to emergency vehicles, a reading of chapter 397, Ambulance Services, leaves little doubt as to its purpose. It is apparent that the ambulance commission was formed to protect the public by assuring that all ambulances in the state are properly equipped, and that all ambulance personnel are thoroughly and adequately trained in order to be able to provide emergency medical services. The purpose of the chapter, read in its entirety, is to assure emergency medical aid and safe, speedy transportation. We must be certain that we read the definitions in § 20-378 so as to coincide with the general purpose as expressed throughout the chapter. See *Biz* v. *Liquor Control Commission,* 133 Conn. 556, 559, 53 A.2d 655.

The medicars which the application concerns clearly are not offering emergency medical service, and the application specifically so states. In fact, the application does not even concern emergency transportation. Rather, it concerns transportation of specified types of individuals who cannot, or cannot comfortably, avail themselves of the usual modes of public transportation: buses or taxicabs. The application clearly refers to people who require no medical assistance in transit, and who desire transportation at a normal speed in order to be taken from one place to another. It seems obvious that this is not ambulance service. It is a livery service for physically handicapped individuals.

In the application, Kennedy Medi-Car, Inc., used the term "wheelchair patients." It is through the word "patients" that it is claimed that chapter 397 applies. It is clear that the term "patient," as used in the application, is not the same as the definition of that term in § 20-378. Clearly, the term "wheelchair patient," in the context of the application, refers to persons who are moved in wheelchairs and who are not in need of immediate medical assistance. It is clear that the service proposed by the applicant was a specialized livery service rather than an ambulance service. Thus, an application to the public utilities commission for a livery permit was proper.

If one wishes to provide medical assistance *and* transportation to persons in need thereof, a permit must be obtained from the ambulance commission. §§ 20-383, 20-385. If, however, one wishes to provide transportation of passengers for hire either to the public in general, or to a special class of people, a permit must be obtained from the public utilities commission. General Statutes § 16-326. Here, Kennedy Medi-Car, Inc., sought only to provide transportation. It applied to the proper commission, and that commission properly accepted jurisdiction.

Chapter 397 was enacted in order to assure that ambulance service in Connecticut would be safe and adequate. The ambulance statutes are not intended to provide exclusive control over *all* services rendered to ill or injured persons. Rather, as the chapter's title indicates, it is to control "Ambulance Services." Our conclusion, therefore, that the service here involved is controlled by chapter 288 is not incompatible with the enactment of chapter 397.

There is no error.

In this opinion the other judges concurred.