In this case we are called upon to determine the constitutionality, on equal protection grounds, of the statutory scheme created by General Statutes 38-325 (b) and (c).[2] The plaintiff sued for *Page 725 
reimbursement of basic reparations benefits paid by it to the defendant who thereafter settled a claim against a third-party tortfeasor. The court below held that the statutory scheme violates both the federal and state equal protection clauses,[3]
and rendered summary judgment for the plaintiff in an amount which deducted from the plaintiff's recovery a portion of the attorney's fee paid by the defendant in settling his claim. We hold that the statute is constitutional and remand the case for further proceedings.
 I
The facts are not in dispute. The defendant, Willie Holder, was the owner and operator of a private passenger automobile which collided with a similar vehicle operated by a third-party tortfeasor on April 28, 1973. The plaintiff, Hartford Accident Indemnity Co., the defendant's insurer, paid $673.12 in basic reparations benefits to the defendant, pursuant to its obligations under the no-fault motor vehicle insurance statutes, General Statutes 38-319
through 38-351. The defendant subsequently received a negotiated settlement of $2187.50 from the third-party tortfeasor in compensation for all the injuries that he sustained in the collision.[4] The plaintiff demanded, under *Page 726 
38-325 (b), full reimbursement from the defendant for the basic reparations benefits previously paid. The defendant tendered the amount of $448.75, which represented the basic reparations benefits paid minus a pro rata deduction for the attorney's fee that he incurred in obtaining the negotiated settlement. The plaintiff refused this tender and commenced suit to obtain reimbursement for the full amount of benefits paid. The defendant filed three special defenses asserting in effect: (1) tender of the $448.75 was payment of all he was legally required to pay; (2) 38-325 violates due process of law; and (3) 38-325 denies him equal protection of the laws.
Both parties moved for summary judgment. The trial court held that the defendant was required by 38-325 (b) to make full reimbursement to the plaintiff, without any deduction for any portion of his attorney's fee, thus in effect ruling out the defendant's first special defense; and that the statutory scheme created by 38-325 (b) and (c) deprived the defendant of equal protection of the laws in violation of both the federal and state constitutions, thus in effect ruling that the defendant's third special defense was valid. Because of its conclusion on the equal protection issue, the court did not rule on the defendant's second special defense based on the due process clauses of the federal and state constitutions. Rather than render judgment for the defendant, however, the court below sought to cure the statutory defect by rendering summary judgment for the plaintiff in the amount of $448.75, which represented the benefits it paid, $673.12, minus one-third of the defendant's attorney's fee, $224.37.
The plaintiff appealed from the court's decision of unconstitutionality of the statutory scheme. The defendant cross appealed, claiming that the trial court *Page 727 
erred by not rendering judgment in his favor upon its conclusion that the statute was unconstitutional.[5]
 II
Analysis of the constitutional issue requires some discussion of the statutory scheme of the no-fault motor vehicle insurance act (hereinafter the act), chapter 690, 38-319 through 38-351, of the General Statutes. Under the act an insurer is liable to pay, without regard to fault, basic reparations benefits up to a limit of $5000 for economic loss arising out of the ownership, maintenance and use of private passenger motor vehicles. Private passenger motor vehicles are defined in General Statutes 38-319 (g) as, in general, private passenger automobiles, station wagons, camper type motor vehicles, and trucks with a load capacity of 1500 pounds or less registered as passenger motor vehicles or used for farming purposes. The definition expressly excludes motorcycles and motor vehicles used as public or livery conveyances.
General Statutes 38-325 provides an insurer with a right to either direct reimbursement or to subrogation for basic reparations benefits which it previously paid to its insured, upon recovery by the insured of consequential damages, beyond the basic reparations benefits, from the third-party tortfeasor who caused his injuries. The equal protection issue arises from the classification created by subsections (b) and (c) of this section. Under subsection (b), if an insured recovers from an insured operator of a private passenger motor vehicle he must, because of his insurer's lien on the recovery, make direct and full reimbursement to his insurer of the basic reparations benefits without deduction of any portion of any attorney's fee he may have incurred in obtaining that *Page 728 
recovery. See note 4, supra. Under subsection (c), however, if an insured recovers from an operator of a motor vehicle which is not an insured private passenger motor vehicle, he need not make direct and full reimbursement to his insurer; the insurer has no direct lien on the recovery but is merely subrogated to the insured's recovery rights to the extent of the benefits paid. In that case, then, if the insured recovers he would be entitled, before remitting to his insurer the basic reparations benefits paid, to deduct therefrom a fair portion of his attorney's fee attributable to its collection. See 6A Appleman, Insurance Law 
Practice (Rev. Ed.) 4096, pp. 287-88; 16 Couch, Cyclopedia of Insurance Law (2d Ed. Sup. 1980) 61.44; note, 2 A.L.R.3d 1441, 2; Cary v. Phoenix Ins. Co., 83 Conn. 690, 701, 78 A. 426 (1910). The practical effect of this difference in treatment in such a case as this is that if the insured is injured by an insured private passenger motor vehicle his recovery bears the full brunt of his attorney's fee and the insurer bears none; if the insured is injured by a motor vehicle which is not an insured private passenger motor vehicle, the insurer would have to share in the legal fee incurred in obtaining the recovery.
In the example given by the trial court, if an insurer pays $3000 basic reparations benefits to its insured who thereafter, with the aid of his attorney, recovers $9000 from a subsection (b) tortfeasor, the insured must reimburse his insurer the full $3000; after paying his attorney an assumed fee of one-third of his recovery, or $3000, he retains a net recovery of $3000. If the same insurer pays $3000 basic reparations benefits to the same insured who thereafter, with the aid of his attorney, recovers $9000 from a subsection (c) tortfeasor, the $9000 would be allocated, in the first instance, $3000 to the attorney, $3000 to the insured and $3000 to the insurer. But 37 Conn. Sup. 723 *Page 729 
because the insurer would be merely a subrogee under subsection (c), and not a lienor under subsection (b), the insured would be entitled, before remitting the $3000 to the insurer, to deduct therefrom a fair portion of the attorney's fee attributable to its collection. Even if we assume, as did the parties and the trial court, that one-third of the attorney's fee is attributable to collection of the basic reparations benefits, the insured would only be required to reimburse his insurer $2000. After paying an attorney's fee of $3000, he would have a net recovery of $4000. Thus, under subsection (c) the insurer and insured share the brunt of the attorney's fee proportionately to each one's recovery; and the insured nets $1000 more than he does under subsection (b), a difference attributable only to the difference between the vehicles operated by the tortfeasors. The defendant asserts, and the trial court held, that this difference is without a rational basis and thus amounts to a violation of his right to equal protection of the laws.
 III A
We agree with the parties and with the trial court that, because the case involves neither a suspect classification nor a fundamental right, the proper standard of review is the rational basis test. Our Supreme Court has recently and exhaustively articulated the principles to be employed in using that test, the weight of the burden on the litigant challenging the statute and the nature of the court's task in deciding whether a rational basis exists: "Where legislation ... which neither contains a suspect classification nor impinges on a fundamental right is challenged on equal protection grounds, we have stated that the plaintiff to prevail must establish that the statutory classification is without rational basis. Waterbury Motor Lease, Inc. v. Tax Commissioner,174 Conn. 51, 60, 381 A.2d 552 (1977); Miller v. *Page 730 
Heffernan, [173 Conn. 506, 509, 378 A.2d 572
(1977), appeal dismissed, 434 U.S. 1057,98 S.Ct. 1226, 55 L.Ed.2d 758 (1978)]; Kellems v. Brown, [163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S.Ct. 911,34 L.Ed.2d 678 (1973)].... Recently, in the context of regulation of economic activity, we described the `rational basis' test in the following manner: `[A]n act regulating economic activity must bear a reasonable relationship to a proper legislative purpose in a manner that is neither arbitrary nor discriminatory. Carroll v. Schwartz, 127 Conn. 126, 130,14 A.2d 754 (1940).... The constitutional issue is whether legislative classifications or discriminations bear "a rational relationship to a legitimate state end and [are] based on reasons related to the pursuit of that goal." Gentile v. Altermatt, 169 Conn. 267, 295,363 A.2d 1, appeal dismissed, 423 U.S. 1041,96 S.Ct. 763, 46 L.Ed.2d 631 (1976).' Caldor's, Inc. v. Bedding Barn, Inc., [177 Conn. 304, 314-15,417 A.2d 343 (1979)].... A classification is allowable if it bears a reasonable relationship to a legitimate purpose of governmental action. Bassett v. Rose,141 Conn. 129, 134, 104 A.2d 212 (1954).... The burden on one attacking the constitutionality of a statute is great. There is a presumption of constitutionality which attaches to a statutory enactment; the burden which rests upon a party asserting its invalidity is to establish that it is unconstitutional beyond a reasonable doubt. Society for Savings v. Chestnut Estates, Inc.,176 Conn. 563, 569, 409 A.2d 1020 (1979); Engle v. Personnel Appeal Board, 175 Conn. 127, 134,394 A.2d 731 (1978); State v. Warren, 169 Conn. 207,217, 363 A.2d 91 (1975); Wilson v. Connecticut Product Development Corporation, 167 Conn. 111,114, 355 A.2d 72 (1974); Kellems v. Brown, supra. `It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law *Page 731 
was enacted must be assumed. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [31 S.Ct. 337,55 L.Ed. 369 (1911)]. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety.' Rast v. Van Deman Lewis Co., [240 U.S. 342, 357, 36 S.Ct. 370,60 L.Ed. 679 (1916)]. (Emphasis added.) See also McGowan v. Maryland, 366 U.S. 420, 425-26,81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Carmichael v. Southern Coal Coke Co., [301 U.S. 495, 509,57 S.Ct. 868, 81 L.Ed. 1245 (1937)]." United Illuminating Co. v. New Haven, 179 Conn. 627,636-42, 427 A.2d 830 (1980).
 B
We therefore "consider whether there is any conceivable basis which might support the act...." Id., 643. In doing so we must assume "the existence of that state of facts at the time the law was enacted...." Id., 642. (Emphasis in original.) Section 38-325 of the General Statutes is part of the no-fault motor vehicle insurance act. The basic purposes of the act are to guarantee prompt payment of benefits to injured covered parties; to reduce insurance premiums and increase efficiency in the reparations system; to improve on the fault system's reliance on litigation based on fault under which large claims were underpaid and minor claims overpaid; to reduce extreme pressure on court dockets; to provide that insurers provide coverage at reasonable rates; and to reduce unreasonably high insurance premium levels and pass on to the consumer the benefits of increased administrative efficiency provided by the no-fault system. Gentile v. Altermatt, 169 Conn. 267, 290-92,363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041,96 S.Ct. 763, 46 L.Ed.2d 631 (1976). See generally, Keeton O'Connell, Basic Protection for the Traffic Victim, A Blueprint for Reforming Automobile Insurance. *Page 732 
The statutory scheme created by 38-325 (b) and (c) has a rational basis in that, in cases of relatively small total recovery the difference in the insured's net recovery, depending on whether he must bear or may share his attorney's fee, creates a system of disincentives and incentives to sue. This system bears a rational relationship to a legitimate state end and is based on reasons related to that goal. United Illuminating Co. v. New Haven, supra, 640.[6]
The vast majority of motor vehicles are private passenger motor vehicles. See Keeton O'Connell, op. cit. 12, n. 13. Thus most injuries from motor vehicle accidents will involve private passenger motor vehicles, and the great majority of those injuries are minor. Id., 43, n. 112. Requiring the subsection (b) insured in those cases of minor injury, and likely minor recovery, to bear the full brunt of his attorney's fee creates a disincentive in him to sue, since his net recovery will be reduced and may even, depending on the recovery and the amount of basic reparations paid, be eliminated entirely. This disincentive in turn serves twin goals of the no-fault system: reducing the pressure of litigation on the court system; and, by maximizing the return to the insurer through full recovery of the benefits paid and by lowering liability costs to insurers of private passenger motor vehicles, permitting reduction in insurance premiums or less of an increase than would otherwise be the case. At the same time, in minor cases involving subsection (c), the insured has, vis-a-vis a subsection (b) insured, an incentive to sue, since his insurer will share the burden of his attorney's fee. The tortfeasors he is encouraged to sue are the owners and operators of motorcycles, large trucks and public or livery vehicles. There is a body of experience to suggest *Page 733 
that operation of motorcycles is more dangerous than that of four-wheeled vehicles because of their relative instability; see Shavers v. Attorney General, 402 Mich. 554, 633-34,267 N.W.2d 72 (1978); it would not be unreasonable for the legislature to have envisioned that encouraging tort liability for the operation of motorcycles could have a deterrent effect on their careless operation, resulting in greater highway safety. See Singer v. Sheppard, 464 Pa. 387,406-407, 346 A.2d 897 (1975). Likewise, there is a body of experience to suggest that the owners of commercial vehicles, such as large trucks and public or livery vehicles, are more sensitive than private passenger vehicle owners to the effect of their drivers' accident rates on their insurance premiums; it would not be unreasonable for the legislature to have envisioned that encouraging tort liability against them could encourage them to take steps, such as driver training, driver reassignment and other mechanisms, which would deter careless operation, resulting in greater highway safety. See James Dickinson, "Accident Proneness and Accident Law," 63 Harv. L. Rev. 769, 779-90 (1950); Keeton O'Connell, op. cit. 249, n. 10. Certainly increased highway safety is "a legitimate purpose of governmental action" to which the classification created by 38-325 (b) and (c) "bears a reasonable relationship." United Illuminating Co. v. New Haven, supra. "It is within the police power of the legislature to regulate the use of our highways and, as an incident thereto, the use of vehicles upon the highways; Silver v. Silver, 108 Conn. 371, 377,143 A. 240, aff'd, 280 U.S. 117, 50 S.Ct. 57,74 L.Ed. 221 [1928]." Gentile v. Altermatt, supra, 300.[7] *Page 734 
Differences in consequences flowing from the differences between private passenger motor vehicles and such vehicles as motorcycles, commercial vehicles and common carriers are not unknown to our law. They run throughout the licensing, registration, safety and equipment provisions of title 14 of the General Statutes. Gentile v. Altermatt, supra, upheld them against an attack that requiring no-fault coverage of one class but not the other violated the equal protection principle.[8] Similarly, statutes awarding attorney's fees to one party and not another, or in certain kinds of cases but not others, have been held to have a rational basis rooted in a public policy to encourage certain kinds of litigation. See note, 73 A.L.R.3d 515. Permitting a sharing of attorney's fees in one kind of case involving one class of vehicles in order to encourage some suits against them, while denying such a sharing in another kind of case involving another class of vehicles in order to discourage suits against them, has no less a rational basis.
We conclude, therefore, that the statutory scheme of General Statutes 38-325 (b) and (c) does not violate either the federal or state constitutional requirement of equal protection of the laws. Because, however, the trial court did not rule on the due process issues raised by the defendant's second special defense those issues are not before us and we do not decide them. *Page 735 
 There is error; the judgment is set aside and the case is remanded to be proceeded with according to law.
In this opinion SHEA and BIELUCH, Js., concurred.