LUMBERMENS MUTUAL CASUALTY COMPANY *v.*
MARGARET SCULLY ET AL.
(2011)

HULL, BORDEN and SPALLONE, Js.

Argued November 15, 1984—decision released February 5, 1985

*Frederick W. Odell,* for the appellants (defendants).

*William P. Meehan,* with whom, on the brief, was *David A. Sierra,* for the appellee (plaintiff).

SPALLONE, J. On September 1, 1974, the defendant Margaret Scully incurred medical expenses and lost wages as a result of a motor vehicle accident in Pennsylvania. The other car involved in the accident was a 1974 Mercury operated by Leonard Wildes, who had leased it from Bianchi Lincoln-Mercury, Inc., a Pennsylvania corporation. At the time of the accident, the defendants were insured under a policy issued by the plaintiff. Under that policy, the plaintiff paid the defendants $2326.38 as basic reparations benefits, pursuant to its obligations under Connecticut's No-Fault Motor Vehicle Insurance Act, General Statutes §§ 38-319 through 38-351.

The defendants subsequently brought suit against Wildes, as a third party tortfeasor, and in settlement of that claim received $26,000 from Wildes' insurance company. Pursuant to General Statutes § 38-325 (b),[1] the plaintiff requested that the defendants reimburse it for the $2326.38 in basic reparations benefits. The defendants refused.

The plaintiff brought this action against the defendants to recover the $2326.38. After a trial to the court, judgment in that amount was rendered for the plaintiff. The defendants now appeal[2] from that judgment. On appeal, they claim that the court erred in concluding that they were required to reimburse the plaintiff under General Statutes § 38-325 (b). The defendants

---

[1] General Statutes (Rev. to 1972) § 38-325 provides in pertinent part as follows: "(b) Whenever a person who receives basic reparations benefits for an injury recovers damages from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under this chapter or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid and the insurer shall have a lien on the claimant's recovery to such extent."

[2] This appeal was originally filed in the Appellate Session of the Superior Court. General Statutes § 51-197a (c).

contend that the tortfeasor's vehicle, because it was leased, was not a private passenger vehicle but was, instead, a vehicle in livery service. They thus claim that they are exempt from the reimbursement requirement. The dispositive issue on appeal is whether the leased vehicle driven by Wildes was a private passenger motor vehicle under General Statutes § 38-325 (b).

General Statutes (Rev. to 1972) § 38-325 (b) states in pertinent part: "Whenever a person who receives basic reparations benefits for an injury recovers damages from the owner, registrant, operator or occupant of a private passenger motor vehicle . . . the insurer is entitled to reimbursement . . . ." General Statutes (Rev. to 1972) § 38-319 (g) defines "private passenger motor vehicle" in part as "a private passenger, station wagon or camper type automobile other than a motorcycle, not used as a public or livery conveyance . . . ." General Statutes (Rev. to 1972) § 16-324 (now § 13b-101) provides in pertinent part that " 'motor vehicle in livery service' means and includes every motor vehicle used for the transportation of passengers for hire . . . ."

In construing the meaning of these terms, we look to both the legislative intent of § 38-325 (b) and to the commonly approved usage of the words themselves. General Statutes § 1-1; *Flanagan Ambulance Service, Inc.* v. *Public Utilities Commission,* 161 Conn. 215, 217, 286 A.2d 315 (1971). We must be certain to read the statutory definition of "private passenger motor vehicle" in light of the general purpose expressed throughout the No-Fault Motor Vehicle Insurance Act. See *Flanagan Ambulance Service, Inc.* v. *Public Utilities Commission,* supra.

"Section 38-325 of the General Statutes is part of the no-fault motor vehicle insurance act. . . . The statutory scheme . . . creates a system of disincentives and

incentives to sue." *Hartford Accident & Indemnity Co. v. Holder,* 37 Conn. Sup. 723, 731–32, 436 A.2d 308 (1981). Essentially, the act provides a disincentive for the insured to sue in cases of minor injury, which will mostly involve private passenger motor vehicles, and an incentive to sue in cases where private passenger motor vehicles are not involved. Id., 732. The insured is thus encouraged to sue "the owners and operators of motorcycles, large trucks and public or livery vehicles." Id. The classification bears a reasonable relationship to the legitimate purpose of increased highway safety since, in the case of large trucks and public or livery vehicles, encouraging tort liability against their owners "could encourage them to take steps, such as driver training, driver reassignment and other mechanisms, which would deter careless operation, resulting in greater highway safety." Id., 733. The reimbursement provision of § 38-325 (b) is central to this scheme by requiring an insured who recovers from an insured owner, registrant, operator or occupant of a private passenger motor vehicle to repay, to his insurer, any basic reparations benefits which he receives.[3] In light of the scheme of incentives created by the no-fault motor vehicle insurance act, an individual who leases a private car for his own use cannot reasonably be expected to take the steps which the owner of a public or livery vehicle might take to keep insurance premiums down.

As to the commonly approved meaning of the words in question, we adopt the analysis set forth in *Greyhound Rent-A-Car, Inc. v. Carbon,* 327 So. 2d 792 (Fla.

---

[3] On the other hand, under General Statutes § 38-325 (c), "if an insured recovers from an operator of a motor vehicle which is not an insured private passenger motor vehicle, he need not make direct and full reimbursement to his insurer; the insurer has no direct lien on the recovery but is merely subrogated to the insured's recovery rights to the extent of the benefits paid." *Hartford Accident & Indemnity Co. v. Holder,* 37 Conn. Sup. 723, 728, 436 A.2d 308 (1981); see *Amica Mutual Ins. Co. v. Barton,* 1 Conn. App. 569, 474 A.2d 104 (1984).

Dist. Ct. App.), cert. denied, 336 So. 2d 1182 (Fla. 1976), which considered whether a rented car was a "motor vehicle" or a "public livery conveyance for passengers" in the context of Florida's automobile insurance law. In that case, the Carbons sued Greyhound Rent-A-Car, Inc. (hereinafter Greyhound), for personal injury protection benefits for injuries sustained in an accident which occurred while they were driving a car rented from Greyhound. Greyhound raised the defense that the rental vehicle was not a "motor vehicle" as defined by the Florida Automobile Reparations Reform Act,[4] but a "public livery conveyance for passengers." The Florida court looked to the common usage of the words when it stated: "Livery conveyance is defined in Black's Law Dictionary, Revised Fourth Addition, 1968, at page 1084, as '[a] vehicle used indiscriminately in conveying the public, without limitation to certain persons or particular occasions or without being governed by special terms.' In Couch on Insurance, 2d, § 1040, it is stated that, '[t]o be a public conveyance requires the indiscriminate use of the vehicle conveying the public and a holding out of the vehicle to the general public for the carrying of passengers for hire. . . . [T]he vehicle is not a public conveyance where its use with respect to others is limited to particular persons and particular times and is governed by special terms.' " Id., 793. The court then reasoned that the rented car driven by the Carbons was not a public or livery conveyance because it was "not subject to indiscriminate use by the general public without limitation to particular persons, particular times

---

[4] The Florida Automobile Reparations Reform Act was the predecessor of the Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730 et seq. Florida Statutes § 627.732 (1973), which was in effect at the time of the accident, provided in pertinent part as follows: "(1) 'Motor vehicle' means a sedan, station wagon, or jeep type vehicle not used as a public livery conveyance for passengers and includes any other four-wheel motor vehicle used as a utility automobile and a pickup or panel truck which is not used primarily in the occupation, profession, or business of the insured."

or special terms." Id. Since the vehicle was rented to an individual and the rental was governed by the special terms of a rental agreement, the court held that the rented vehicle was a "motor vehicle." Id.

We likewise conclude that the motor vehicle driven by Wildes was not a public or livery conveyance or a "motor vehicle in livery service" under General Statutes (Rev. to 1972) § 16-324 and hold that the trial court did not err in finding that the defendants failed to prove that the leased vehicle was anything other than a conventional passenger vehicle.[5] In view of the purpose of our no-fault insurance law and the commonly approved usage of the words in question, the leased vehicle driven by the tortfeasor was a "private passenger motor vehicle" within General Statutes § 38-325 (b).

There is no error.

In this opinion the other judges concurred.

---

[5] Where an exception to a statute forms an integral part of a right created by that statute, the plaintiff bears the burden of showing that he comes within the limited class for whose benefit the right was created. *Goodwin* v. *Giovenelli,* 117 Conn. 103, 107, 167 A. 87 (1933). If it is assumed that the reimbursement provision of subsection (b) of General Statutes § 38-325 is such an exception, the plaintiff would have to prove that it fell within that exception. In view of the general purpose of the No-Fault Motor Vehicle Insurance Act, however, we do not view subsection (b) as such an exception. Further, the claim that the vehicle was not a private passenger motor vehicle was raised by the defendants as a special defense. Generally, in any affirmative or special defense, the burden of proof rests with the defendant. *State* v. *Arroyo,* 181 Conn. 426, 430, 435 A.2d 967 (1980). The defendants consequently bore the burden of proving the claim which they affirmatively raised.