RAJA ZABANEH ET AL. *v.* DAN BEARD
ASSOCIATES, LLC
(AC 28107)

Bishop, McLachlan and Borden, Js.

Argued October 16, 2007—officially released January 1, 2008

*Ian Angus Cole,* for the appellant (substitute plaintiff).

*William J. Wenzel,* for the appellee (defendant).

### Opinion

BORDEN, J. The substitute plaintiff, NSHE Leechburg, LLC,[1] appeals from the judgment of the trial court rendered in favor of the defendant, Dan Beard Associates, LLC, after a trial to the court, denying the

---

[1] The original plaintiffs, Raja Zabaneh and Loraine Zabaneh, sold their interest in the property at issue to NSHE Leechburg, LLC, subsequent to the initiation of this action. Thereafter, NSHE Leechburg, LLC, was substituted as the plaintiff. We therefore refer in this opinion to NSHE Leechburg, LLC, as the plaintiff.

plaintiff's request for injunctive relief. The court deter-mined that the plaintiff does not have express or pre-scriptive easements[2] to use the defendant's property and, therefore, denied the plaintiff's request for an injunction ordering the defendant to remove certain fences that the defendant had erected impeding the use of the alleged easements. The dispositive issue on appeal is whether the court properly determined that the defendant had demonstrated that the plaintiff's prior use of the defendant's property was with the defen-dant's permission. We affirm the judgment of the trial court.[3]

Certain facts are undisputed. The plaintiff and the defendant are neighboring property owners. The plain-tiff owns two buildings located on a single parcel of land at 60-64 Huntington Street in the Huntington section of Shelton. The property is bounded to the north and east by the defendant's property. More specifically, the prop-erty is bounded to the north and east by a parking lot owned by the defendant and leased to Beechwood Market. The plaintiff's predecessors in title are Herbert Fitzpatrick and Gloria Fitzpatrick, who owned the prop-erty from the late 1940s to June, 1984; Franklyn E. Ackley, Jr., and Georgiann Ackley, who owned it from June, 1984, to July, 1996; and Raja Zabaneh and Loraine

[2] The court found in favor of the defendant on the plaintiff's claim for express easements, and that issue is not before us in this appeal.

[3] Because of our resolution of the issue regarding permission, we do not reach the plaintiff's other claims, namely, that the court improperly required the plaintiff to prove its claim of prescriptive easement by a higher standard of proof than warranted, misconstrued the "claim of right" requirement in determining that the plaintiff's use was not adverse, determined that the asserted prescriptive easement was too indefinite to be recognized and determined that the use the plaintiff made of the defendant's parking lot was similar to the use made by the general public. Furthermore, although the plaintiff asserts that it and previous property owners purchased the property and made improvements in reliance on their ability to use the accessway to the plaintiff's rear parking lot, the plaintiff does not raise the issue of easement by estoppel, and therefore we do not consider it.

Zabaneh, who owned it until July, 2005, when they sold it to the plaintiff. The defendant's immediate predecessor in title was Daniel Beard in his individual capacity.[4] Behind the plaintiff's buildings is a parking area that lies wholly on the plaintiff's land, the east end of which borders on the defendant's parking lot. A row of hedges separates the two parking areas, except for an opening wide enough to allow vehicular traffic to pass between them.

The plaintiff and its predecessors in title have driven through the defendant's parking lot and through this accessway to enter and exit the plaintiff's rear parking lot for a period beginning when the Fitzpatricks owned the property. They also used a pedestrian walkway connecting the defendant's parking lot to the north side of the plaintiff's land. The defendant erected a chain-link fence on the portion of its parking lot bordering the eastern boundary of the plaintiff's land in September, 2003, thereby blocking vehicular traffic from the defendant's parking lot to the plaintiff's rear parking area.

The plaintiff initiated this action by filing an application for a temporary injunction and a complaint seeking a permanent injunction. The plaintiff requested the court to order "the defendant to restore the [plaintiff's] access to [its] parking lot by removing the fence it recently erected across the paved entrance to the parking lot and to refrain from interfering with the [plaintiff's] right-of-way." Subsequent to the initiation of this action, the defendant built an additional chain-link fence along the plaintiff's northern border, thereby preventing use of the pedestrian walkway leading from the defendant's parking lot to the plaintiff's land. In its final form, the plaintiff's amended complaint had three

---

[4] The court did not make a finding regarding when the defendant became the owner of its property. The defendant, in its posttrial brief, alleged that Beard owned the property during the relevant period until 2000, when ownership passed to the defendant.

counts. In the first count, the plaintiff claimed a prescriptive easement passing over the defendant's parking lot to access the rear parking area on the plaintiff's property. The complaint alleged that this accessway is the only vehicular access to the plaintiff's parking area. In its second count, the plaintiff claimed a prescriptive easement over the defendant's parking lot that provides pedestrian access to the north side of the plaintiff's property. In its third count, the plaintiff alleged, in essence, that each of the previously claimed prescriptive easements were really easements expressly granted to the plaintiff's predecessors in title. The plaintiff also claimed that Beard had granted "a permanent right to use the parking lot located on the defendant's property for additional parking for the owners, commercial tenants and customers of businesses located on the property known as 60-64 Huntington Street . . . ." The defendant denied the plaintiff's claims. Additionally, as to the first and second counts, the defendant raised as a special defense that any use of the defendant's property was by permission. In its answer to the third count, the defendant again raised the special defense of permission and an additional special defense that any express easement that may have previously existed had been abandoned. The defendant also filed a counterclaim for declaratory relief, in which it requested the court to declare that the plaintiff holds "no right, title or interest to, in or upon any of the property owned by the defendant . . . ."

In its memorandum of decision, the court found, among other things, that the Fitzpatricks' use of the defendant's property had been by permission and that the Ackleys knew of this grant of permission. The court subsequently rendered judgment in favor of the defendant. After the court had rendered its decision, the defendant filed a motion for articulation. Among its requests, the defendant asked the court to clarify its

finding that the use of the defendant's property was with permission. Specifically, the defendant requested that "the court further clarify and articulate in the memorandum of decision that such finding of permission is an affirmative finding and sustains the special defense of permission." The plaintiff objected to defendant's motion for articulation. With respect to the defendant's special defense, the plaintiff argued that the court "clearly" stated that any use was with permission and that this determination was "clear and unambiguous" in the memorandum of decision. The court denied the motion for articulation. This appeal followed.

"An injunction is not [ordered as of right] for an injury threatened or done to the estate or rights of a person; but the granting it must always rest in sound discretion, governed by the nature of the case." *Enfield Toll Bridge Co.* v. *Connecticut River Co.*, 7 Conn. 28, 49 (1828); see *Tighe* v. *Berlin*, 259 Conn. 83, 87, 788 A.2d 40 (2002). The rule in Connecticut is that a "prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. . . . The standard of proof that is required is a fair preponderance of the evidence." (Internal quotation marks omitted.) *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 704–705, 829 A.2d 8 (2003); see also *Chalker* v. *Dickinson*, 1 Conn. 382, 384 (1815). The use must occur without license or permission. *Gallo-Mure* v. *Tomchik*, supra, 705. "Where . . . there is neither, on the one side, proof of an express license or permission from the landowner, nor, on the other, proof of an express claim of right by the person using the way, the character of the use, whether adverse or permissive, is left to be determined as an inference from the circumstances of the parties and the nature and character of the use." *Phillips* v. *Bonadies*, 105 Conn. 722, 727, 136 A. 684 (1927). It is not the plaintiff's burden to establish

that an otherwise apparently adverse use of the defendant's property was conducted without the defendant's permission or license. *McManus* v. *Roggi*, 78 Conn. App. 288, 296, 826 A.2d 1275 (2003). When the defendant raises permission by way of a special or affirmative defense, the burden of proof rests on the defendant; see *Lumbermens Mutual Casualty Co.* v. *Scully*, 3 Conn. App. 240, 245 n.5, 486 A.2d 1141 (1985); who must prove the special defense by a fair preponderance of the evidence. See 1 E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 83 (e), pp. 246–47.

The plaintiff claims that the court improperly found that any use that the plaintiff, and its predecessors in title, made of the defendant's land was by permission, thereby defeating the plaintiff's claims for prescriptive easements. Specifically, the plaintiff argues that: (1) the court improperly required the plaintiff to disprove permission rather than require the defendant to prove that permission had been granted; (2) if the court had used the correct standard to evaluate the defendant's special defense, the conclusion that the evidence supported a finding of permission was clearly erroneous; and (3) if the court properly found permission as between the defendant and the plaintiff's predecessors in interest, the Fitzpatricks, such permission was implicitly revoked when the Fitzpatricks sold the property. We disagree with the plaintiff and, therefore, affirm the court's finding that any use that the plaintiff made of the defendant's property was by permission.

I

The plaintiff first argues that the court improperly required that it, rather than the defendant, bear the burden of proof regarding the existence of permission. We are unpersuaded that the court improperly allocated

the burden of proof on the question of permission to use the defendant's property.[5]

We note the following relevant portions of the court's memorandum of decision. The court commenced its memorandum of decision by noting that the defendant had raised the special defense of permission. Before evaluating the testimony regarding permission, the court stated as a rule: "Using the [defendant's] property for access which was obtained by permission granted by Beard or his successor cannot ripen into a prescriptive right, as such use under such conditions recognizes the rights of the servient estate rather [than] a use under any claim of right." Regarding the evidence relating to the plaintiff's predecessors in title, the court stated: "The Fitzpatricks, who were longtime neighbors of Beard as prior owners of the [plaintiff's] property, recognized that their use of the [defendant's] property was by permission . . . . Franklyn Ackley, by deposition dated January 3, 2005, testified that as a former owner of the [plaintiff's] property . . . he understood that permission had been granted to access his [parking area] in the rear . . . and he never claimed any right to use it." (Citations omitted.)

Despite having found that Beard had given the Fitzpatricks permission to use the defendant's parking lot to access the rear parking area, the court did not refer to the defendant's special defense in its concluding paragraph. Instead, after having conducted an analysis of the plaintiff's claim, which it intertwined with its analysis of the issue of permission, the court merely concluded that the plaintiff had not proven the elements of a prescriptive easement. The defendant seizes on this ambiguity in the memorandum of decision and essentially argues that this court should resolve the ambiguity in its favor.

[5] The parties agree that the defendant was legally required to prove its special defense by a fair preponderance of the evidence.

"When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Smith* v. *Muellner*, 283 Conn. 510, 536, 932 A.2d 382 (2007) "To the extent that the trial court's memorandum of decision may be viewed as ambiguous in regard to the assignment of the burden of proof . . . we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." (Internal quotation marks omitted.) *Abington Ltd. Partnership* v. *Heublein*, 257 Conn. 570, 586 n.29, 778 A.2d 885 (2001).

We agree that the memorandum of decision is ambiguous as to which party was assigned the burden of proof on the issue of the special defense of permission. We, however, resolve this ambiguity in a manner that supports, rather than undermines, the judgment. First, the plaintiff did not file a motion for articulation, and our Supreme Court has held that ambiguities, when the challenging party does not first file a motion for articulation, should be resolved in a manner that upholds the judgment. Second, the plaintiff took affirmative steps to thwart the defendant's attempt to clarify any ambiguity regarding the finding of permission. After the court had rendered judgment, the defendant filed a motion requesting the court to articulate that it had determined that the defendant had proved the special defense of permission by a preponderance of the evidence. The plaintiff objected, stating that the judgment was "clear and unambiguous." In light of these considerations, we are unpersuaded that the court required the plaintiff, rather than the defendant, to bear the burden of proof on the special defense of permissive use of the defendant's parking lot.

## II

The plaintiff next argues that the court's finding that the Fitzpatricks had used the defendant's property with

permission was clearly erroneous. Specifically, the plaintiff argues that the court was unable, as a matter of law, to consider evidence that one of Beard's tenants had given permission to the Fitzpatricks to pass over the defendant's parking lot and that there was insufficient information from which the court could determine that Beard had given his permission directly to the Fitzpatricks.[6] We disagree.

A finding of fact is clearly erroneous when there is no evidence in the record to support it or when, although there is some evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Smith* v. *Muellner*, supra, 283 Conn. 533.

In determining that the Fitzpatricks had received permission to use the defendant's property, the court explicitly relied on a transcript of testimony that Gloria Fitzpatrick provided at a Shelton zoning board of appeals meeting. In 1978, Gloria Fitzpatrick testified before the board to support her request for a variance so that she could operate a thrift shop in one of the buildings on her property. One of the issues before the board was whether the property had sufficient parking. An excerpt of the testimony relied on by the court follows:

"[Board member Gerard] St. Laurent: . . . She has a letter from her . . .

"Mrs. Fitzpatrick: The Beechwood supermarket.

---

[6] The defendant, in addition to arguing that the court's finding of permission as to the Fitzpatricks was supported by the evidence, also asserts that the evidence was sufficient for the court to have determined that the Ackleys' use of the property was with express permission. The court was faced with conflicting testimony as to this point, however, and it did not make a finding that Beard had expressly granted the Ackleys permission, but only that Franklyn Ackley "understood that permission had been granted" to use the defendant's parking lot.

"Mr. St. Laurent: The Beechwood supermarket, her immediate neighbor.

"Mrs. Fitzpatrick: Because—you see . . . Beard owns the property, but Beechwood signs the lease . . . .

\* \* \*

"Mrs. Fitzpatrick: [S]o, Beechwood just signed a lease for twenty more years. So, they have control of the parking area in back of my house."

St. Laurent then read the letter, which was hand-written by Beard's tenant, Robert D. Scanlon, manager of Beechwood Market, the original of which was also before the court.

"To Whom It May Concern: As leasee of the property of . . . Beard . . . we grant permission to Herbert and Gloria Fitzpatrick to use the lower parking area to the rear of their house in conjunction with a proposed thrift shop. Likewise, we grant a right-of-way through the parking area, as a means of access to their property."

The court also had before it the transcript of Scanlon's deposition. Scanlon testified that Beard stated that he, Scanlon, could grant permission to others to use the parking lot as long as such uses did not interfere with Beard's ownership interest in the property.

The plaintiff asserts that to the extent that the court relied on permission from Scanlon, this reliance was misplaced because only an owner of record can grant a license to use land. We are not aware of any case from Connecticut supporting this assertion.[7]

---

[7] The plaintiff relies on a case from the Appellate Division of the New York Supreme Court, *Duke* v. *Sommer*, 205 App. Div. 2d 1009, 613 N.Y.S.2d 985 (1994). *Duke*, however, is distinct from the present case. In *Duke*, the plaintiffs had purchased from Edith Bills property near, but not adjoining, a lake. During the subsequent forty years, the plaintiffs had seasonally passed over the defendant's property to reach the lake. One of the plaintiffs commented during a deposition that she recalled receiving "permission of some sort" from Edith Bills' son, Kenneth Bills, to pass over the defendant's

Scanlon had a long-term lease that provided him with, among other things, control over the parking lot in question. Further, Scanlon testified during his deposition that Beard had authorized him to grant permission to others to use the parking lot. See *Stueck* v. *G. C. Murphy Co.*, 107 Conn. 656, 663–64, 142 A. 301 (1928) On these facts, we conclude that Scanlon was authorized to grant the Fitzpatricks permission to use the parking lot to access their rear parking area. Furthermore, on the basis of Scanlon's letter and deposition and Gloria Fitzpatrick's recorded testimony, we conclude that the court's *factual finding of permission was supported* adequately by the evidence in the record.

### III

Finally, the plaintiff argues that the court improperly determined that Scanlon's permission to the Fitzpatricks was not implicitly revoked or repudiated when the Fitzpatricks sold their property to the Ackleys in 1984.[8] Specifically, the plaintiff argues that the license was implicitly revoked because (1) the relationship between Beard and the Fitzpatricks was significantly different from the relationship between Beard and the Ackleys, and (2) the Ackleys' use of the accessway was significantly outside the parameters of the original license. We are unpersuaded.

"[A] license in real property is a mere privilege to act on the land of another, which does not produce an

property. The trial court relied on this testimony to deny the plaintiffs' claim of a prescriptive easement. The Appellate Division reversed, noting that the Bills did not have an ownership interest in the defendant's property. Although not explicitly stated, the import of this determination was that the Bills, who were the predecessors in title to the plaintiffs' land, had no legal control over the defendant's land.

[8] In its reply brief, the plaintiff explicitly disclaims any argument that the license was automatically revoked by the sale itself. Therefore, we need not determine whether the license given to the Fitzpatricks was transferrable. Cf. *Prince* v. *Case*, 10 Conn. 375 (1835); *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002).

interest in the property . . . ." (Internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 845, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). "A use that is initially permissive can become adverse only by express or implied revocation or repudiation of the license." 1 Restatement (Third), Property, Servitudes § 2.16, comment (f), p. 232 (2000). The existence of permission is a factual question; therefore, we must decide whether the court's determination was clearly erroneous. See *Lisiewski* v. *Seidel*, 72 Conn. App. 861, 872, 806 A.2d 1121, cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002).

The plaintiff first asserts that any license granted to the Fitzpatricks to use the accessway was implicitly revoked when the Fitzpatricks sold the land to the Ackleys. In support of its argument, the plaintiff relies on § 2.16 of the Restatement (Third) of Property, Servitudes.[9] Comment (f) of that section notes that an initially permissive use can become adverse only if the license is revoked or repudiated. Id., § 2.16, comment (f), p. 232. The Restatement further provides that "[i]f the initial use is deemed permissive because of facts that overcome a presumption of adverse use . . . a change in the facts may constitute an implied revocation." Id. Illustration nineteen hypothesizes a situation in which two sisters own adjoining land, and one sister uses the property of the other to access her land. Id., illustration (19). The Restatement asserts that this use, absent additional facts, can justifiably be presumed to be permissive, as "implied by the closeness of their relationship

---

[9] Section 2.16, comment (f), states in relevant part: "A use that is initially permissive can become adverse only by express or implied revocation or repudiation of the license. If the initial use is deemed permissive because of facts that overcome a presumption of adverse use . . . a change in the facts may constitute an implied revocation. Repudiation can be implied by acts that are inconsistent with recognition of the licensor's superior title." (Citation omitted.) 1 Restatement (Third), supra, § 2.16, comment (f), p. 232.

. . . ." Id. The illustration further provides, however, that when one of the properties is sold to a stranger, the change in the relationship between the owner and the user can justify a finding that the implied permission was implicitly revoked. Id.

The plaintiff asserts that the Fitzpatricks were close friends of Beard and that the Ackleys were strangers at the time they purchased the property, and it argues that the court should have determined that the permission was implicitly revoked upon sale. The defendant, on the other hand, argues, first, that the illustration applies only when the initial finding of permissive use is implied from special facts, and not to situations where, as here, the permission is expressly given, and, second, that it applies only when the original owners are family. We need not determine whether the defendant is correct that the reasoning of illustration nineteen does not apply, as a matter of law, to the facts at hand because we conclude that the plaintiff has not demonstrated that the relationship change was so great as to compel the court to presume the license was revoked.

The grant of the license to use the accessway was not given directly by Beard himself but, rather, by Scanlon, his tenant. According to Scanlon, Beard had authorized him to allow others to use the property as long as their use did not interfere with Beard's ownership. This indicates that the friendly relationship between Beard and the Fitzpatricks, as relied on by the plaintiffs, was not an overriding concern of the grant of the license, which Scanlon issued. Second, the license was not limited to the personal use of the Fitzpatricks and their social guests, as would likely be the case in a situation like that in the Restatement illustration but, rather, the license was granted for commercial use so that the Fitzpatricks could establish a thrift shop and have sufficient parking for their future customers. With regard to the grant of the license, then, the relevant relationship

was one of neighboring commercial lessors. The Ackleys continued to rent the buildings to commercial tenants, and so their relationship to Beard was one of neighboring commercial lessors. Further, we consider that permission was, at least initially, expressly granted. Thus, this is not a situation in which the justification for the court's initial presumption of permissive use evaporates upon sale of one of the properties, such as in illustration nineteen of the Restatement. We are unpersuaded that the change in the nature of the relationship was so significant that the court was legally obliged to find that the license was implicitly revoked upon sale.

Next, the defendant asserts that the license was implicitly repudiated by the Ackleys at the time of their purchase because the Ackleys used the accessway in a manner significantly different from the use contemplated by the license. We disagree.

Although there is some evidence that the volume of traffic using the accessway increased during the Ackleys' time as landowners, the evidence does not compel the conclusion that the Ackleys, their customers or their tenants used the property in a way that was inconsistent with the permission that Scanlon had given to the Fitzpatricks or that reasonably would have put Beard on notice that he needed to reassert his ownership and control over the accessway in question. Beard had authorized Scanlon to grant others permission to use the commercial parking lot as long as that use did not interfere with Beard's ownership interests. Scanlon, so authorized, granted a license to the Fitzpatricks to cross over the parking lot to provide access to their future customers and tenants to their rear parking area. The Ackleys used the accessway in a similar manner, to provide their customers and tenants access to their rear parking area. Thus, the Ackelys' use of the accessway was not so repugnant to the initial grant as to

compel the trial court to find that the Ackelys implicitly repudiated the license. Further, we note that the court found that Franklyn Ackley "understood that permission had been granted to access his property in the rear . . . ." Thus, this is not a case in which the circumstances regarding the initial use of the accessway had been forgotten by long usage. Even if Franklyn Ackley did not know the exact nature of the grant of permission, whether it was a grant of license only or of legal easement, he was aware that some form of permission had been granted.

For these reasons, we conclude that it was not clearly erroneous for the court to determine that the license initially granted to the Fitzpatricks survived the transfer of the alleged dominant estate to the Ackleys. Because the Fitzpatricks and the Ackleys used the defendant's land pursuant to a license, and the Zabanehs and the plaintiff did not use the accessway for a period sufficient to justify the finding of a prescriptive easement, we are unpersuaded that the court improperly determined that the plaintiff failed to establish a prescriptive easement over the defendant's land.

The plaintiff failed to demonstrate that it had a right, legal or equitable, to use the defendant's property as alleged. Therefore, we conclude that the court did not abuse its equitable discretion in declining to enjoin the defendant from building and maintaining its fences.

The judgment is affirmed.

In this opinion the other judges concurred.