### Town of Manchester v. Manchester Police Union, Local 1495, Council 15, AFSCME, et al. (2449)

HULL, BORDEN and DALY, Js.

Argued October 10—decision released December 4, 1984

*Edward T. Lynch, Jr.,* for the appellants (named defendant and intervening defendant).

*Barry W. Botticello,* for the appellees (plaintiff and third party defendants).

BORDEN, J. This appeal[1] involves the issue of whether, under the town of Manchester code, a police officer is entitled to take early retirement at age forty-four with seventeen years of service. The trial court held in effect that he is not so entitled. We also hold that he is not so entitled, but for reasons other than those used by the trial court.

In 1980, Raymond Mazzone, who was age forty-four and had served as a Manchester police officer for seventeen years, filed a request with the town pension board for early retirement and immediate payment of pension benefits based on § 13-41 (b) of the town code and article XV.C.1. of the town personnel rules. He had been employed as a police officer since January 6, 1963. He claimed that his normal retirement date, for purposes of calculating early retirement, was January 6, 1988, twenty-five years from his initial employment, and that the early retirement provisions of the code applicable to him permitted him to take early retirement after at least ten years of service and within ten years of his normal retirement date. The board denied

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

his request, claiming that his normal retirement date for purposes of calculating early retirement was age sixty, and that the code contained no provision for a police officer to receive pension benefits prior to age fifty with twenty-five years of service.

Manchester Police Union, Local 1495, Council 15, AFSCME, which is the collective bargaining agent for all interested police officers under a collective bargaining agreement with the town, sought to arbitrate the dispute. The town as plaintiff brought this action against the union to enjoin the arbitration. Mazzone intervened as a party defendant. The union abandoned its efforts to have the issue arbitrated, summoned the board and the town treasurer as third party defendants,[2] and asserted a counterclaim against the plaintiff and a cross complaint against the third party defendants. The counterclaim and cross complaint, which mirror each other, sought a declaratory judgment[3] that age fifty is the normal retirement date for police officers, that police officers are eligible for early retirement ten years before that date in accordance with § 13-41 (b) of the code, and that benefit calculations be based on age fifty as the normal retirement date.

The trial court agreed with the plaintiff that the normal retirement date[4] of a police officer is age sixty and that a police officer was eligible for early retirement

[2] Because the third party defendants are allied in interest with the plaintiff, our references herein to the plaintiff include them.

[3] The counterclaim and cross complaint also alleged violations of the collective bargaining agreement and of the defendants' constitutional rights, and sought injunctive and monetary relief. Since the case was tried and decided in the trial court, however, as a declaratory judgment action, we consider it in that posture. *Trivalent Realty Co.* v. *Westport,* 2 Conn. App. 213, 215 n.4, 477 A.2d 140 (1984).

[4] Although the trial court used the term "normal retirement age" rather than "normal retirement date," and although the parties differ here on whether those terms have different meanings, it is clear that what the trial court meant was normal retirement date. We conclude, moreover, that the two terms are used synonymously in the Manchester code.

benefits at age fifty with twenty-five years of service, and rendered a declaratory judgment accordingly. The defendants appeal. We disagree with both the plaintiff and the defendants. We conclude that a police officer's normal retirement date is the first day of the month following his fiftieth birthday, and that he is eligible for what may be called early retirement benefits on that date, with less than twenty-five years of service, pursuant to § 13-41 (e) (2) of the Manchester code.

Chapter 13 of the code governs pensions and retirement of town employees. Article III of chapter 13, entitled "Supplemental Pension Plan," contains the critical sections of the town's pension plan applicable to this case. They are § 13-41 (a), entitled "Normal retirement";[5] § 13-41 (b), entitled "Early retirement";[6]

---

[5] Section 13-41 (a) reads in pertinent part as follows:

"(a) NORMAL RETIREMENT. Each member of the plan shall normally retire and commence to receive pension payments in accordance with these supplemental pension ordinances on his normal retirement date, which shall be the first day of the month following attainment of the sixty-fifth (65) anniversary of his date of birth . . . . The member shall be required to make written application for retirement to the pension board at least thirty (30) days prior to his normal retirement date."

[6] Section 13-41 (b) reads in pertinent part as follows:

"(b) EARLY RETIREMENT. A member who has completed at least ten (10) years of service with the town may, with the approval of the board of directors, request, by written application to the pension board, that pension payments be commenced to him in a reduced amount prior to his normal retirement date. Pension payments shall, upon receipt by the pension board of such application, be commenced on an early retirement date which shall be the first day of any month specified in the member's application which is within ten (10) years before the member's normal retirement date. The monthly amount of early retirement benefit payable to a member retiring on his early retirement date shall be determined by the pension board in the same manner as his normal retirement benefit as outlined in section 13-43 (b), based on his service to his early retirement date, and reduced 0.4167 per cent for each full month by which the date he retires precedes his normal retirement date. The member's employment shall cease on or prior to the commencement of pension payments, and no further contributions shall be made to the plan with respect to said member. Application for early retirement shall be made at least thirty (30) days before pension

## and §§ 13-41 (e) (1) and 13-41 (e) (2), entitled "Retirement for policemen."[7]

payments are to commence to the member and, after the request has been granted, no change in the member's retirement date may be made without consent of the pension board, *provided, however, this subsection shall not apply to members eligible for benefits provided by paragraph (e) (1) of this section.*" (Emphasis added.)

[7] Sections 13-41 (e) (1) and 13-41 (e) (2) read in pertinent part as follows:

"(e) RETIREMENT BY POLICEMEN. (1) Any provisions of this article to the contrary notwithstanding, the policemen and officers of the police department may retire and receive pension payments provided they shall have completed at least twenty-five (25) years of service in the police department and have met the age requirement on the appropriate effective dates listed below: . . . (c) Effective July 1, 1976 and thereafter, attained age fifty (50).

"Policemen and officers may retire and receive a pension commencing the first day of the month following the completion of the above requirements. Effective July 1, 1975, each policeman and officer will be required to take a physical examination, as determined by the general manager, once he attains his fifty-third (53rd) birthday. Beginning July 1, 1976, such physical examination will be required after each policeman's and officer's fiftieth (50th) birthday. Once a policeman and officer attains his fifty-fifth (55th) birthday, he must, by written application, request that the general manager extend his period of employment on a year to year basis beyond such policeman's and officer's fifty-fifth (55th) birthday, and, if such application is approved by said general manager, said general manager shall notify the pension board, in writing, of such approval; however, each policeman and officer must retire at age sixty (60). . . . The monthly amount of pension payable to a policeman or police officer who retires under this paragraph on and after July 1, 1970, with at least twenty-five (25) years of service shall be an amount equal to one-twelfth of fifty (50) per cent of his final average annual wage or salary. If a policeman or police officer shall complete in excess of twenty-five (25) years of service in the police department, he shall be entitled to an additional two (2) per cent of his final average annual wage or salary for each full year and fractions thereof to the nearest completed month of such service in excess of twenty-five (25) years. The maximum pension payable under this plan shall be sixty-six and two-thirds (66-⅔) per cent of a policeman's and officer's final average annual salary.

"(2) The monthly pension payable to a policeman or police officer who retires on his normal retirement date with less than twenty-five (25) years of service shall be computed as above, and shall be multiplied by a fraction, the numerator of which shall be the number of full years of service and fractions thereof to the nearest completed month completed prior to his normal retirement date, and the denominator of which shall be twenty-five (25)."

Paragraph (3), not quoted here, defines the term "final average annual wage or salary."

The defendants argue that a police officer's normal retirement date is age fifty with twenty-five years of service, and that, by virtue of subsection (b) of § 13-41 of the code, he is entitled to take early retirement after ten years of service and within ten years of his normal retirement date. Indeed, their entire position in this case is premised on the applicability of § 13-41 (b) to police officers; Mazzone specifically made his request for early retirement pursuant to that subsection. The defendants point to evidence of the intent of their negotiators involved in collective bargaining with the town in 1974. That bargaining, which dealt with pensions for police officers, resulted in agreements which were subsequently approved by the town and reflected in amendments to the code. Suffice it to say that we have examined that evidence and find it unpersuasive.[8] We conclude, instead, that § 13-41 (b) does not apply to police officers.

The principles of construction of state statutes apply equally to local ordinances. *Duplin* v. *Shiels, Inc.,* 165 Conn. 396, 399, 334 A.2d 896 (1973). One of the most basic of those principles is that "[w]here the meaning of [an ordinance] is clear and the language unambiguous, the enactment speaks for itself and leaves no room for construction by the court." *Breen* v. *Department of Liquor Control,* 2 Conn. App. 628, 631, 481 A.2d 755 (1984). The last sentence of subsection (b) of § 13-41,

---

[8] The defendant's argument based on that evidence is without merit for another reason. The argument amounts to a claim that, because those agreements conflicted with § 13-41 (b) of the code, the terms of the agreements approved by the town prevail over the code by virtue of General Statutes § 7-474 (f), which is part of the municipal collective bargaining statutes; General Statutes §§ 7-467 through 7-477. General Statutes § 7-474 (f) provides, in general terms, that in case of conflict between a collective bargaining agreement approved by a town and local enactments, the agreement prevails. There is no showing here, however, that before it approved the agreements the town was apprised of that conflict, as is required by General Statutes § 7-474 (b). See *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 191, 425 A.2d 1247 (1979).

in clear and unambiguous language, the meaning of which is not open to question, provides that "this subsection shall not apply to members eligible for benefits provided by paragraph (e) (1) of this section." See footnote 6, supra. Paragraph (e) (1) "of this section" is the part of § 13-41 which provides for retirement by police officers. See footnote 7, supra.

It is quite clear, therefore, that, for purposes of the issues raised in this case, retirement of police officers is governed, not by §§ 13-41 (a) and 13-41 (b), which apply to other town employees, but by §§ 13-41 (e) (1) and (2), and, more specifically, that the early retirement provisions of § 13-41 (b) do not apply to police officers. Section 13-41 (e) carves out of the general pension provisions of the code special rules which apply only to police officers. This reading is buttressed by the following introductory language of § 13-41 (e) (1): "Any provisions of this article to the contrary notwithstanding . . . ."

Under § 13-41 (a), a town employee who is not a police officer has a normal retirement date of the first day of the month following his sixty-fifth birthday. See footnote 5, supra. Under § 13-43 (b), if he has thirty years of service he receives an annual pension of fifty percent of his final annual average wage or salary; if he has less than thirty years of service, his annual pension is reduced proportionately. Under § 13-41 (b), he may take early retirement at age fifty-five with ten years of service, at a reduced pension. See footnote 6, supra. Under § 13-41 (c), he may take "deferred retirement" and continue to work beyond age sixty-five, with the approval of the town's general manager, given on a year to year basis.

Under § 13-41 (e) (1); see footnote 7, supra; a police officer may retire at age fifty with twenty-five years of service; he may continue to work after age fifty-five

with the approval of the town's general manager, given on a year to year basis; and he must retire at age sixty. If he has twenty-five years of service his annual pension is fifty percent of his final average annual wage or salary; if he has more than twenty-five years of service, his pension is increased by two percent of that wage or salary, for each year of service beyond twenty-five to a maximum of sixty-six and two-thirds percent of his final average annual wage or salary.

This analysis leaves for consideration subsection (2) of § 13-41 (e), which provides for a proportionately reduced "monthly pension payable to a policeman or police officer who retires on his *normal retirement date* with less than twenty-five (25) years of service . . . ." (Emphasis added.) See footnote 7, supra. Although, unlike § 13-41 (b) applicable to other town employees, this paragraph does not use the term "early retirement," it is this paragraph and its use of the term "normal retirement date" which governs the request for a declaratory judgment in this case.

The trial court concluded, and the plaintiff urges us to conclude, that "normal retirement date" here means age sixty, and that any retirement prior to that point in time is early retirement. We disagree. We hold that a police officer's "normal retirement date" under § 13-41 (e) (2) means the first day of the month following his fiftieth birthday, and that, under that paragraph, he may retire on that date without regard to his years of service and receive a proportionately reduced pension calculated in accordance with that paragraph.

First, we note that unlike §§ 13-41 (a) and (b), which apply to other town employees but not to police officers, § 13-41 (e) (2) does not define the term "normal retirement date." We also note that, where the term *is* defined albeit not with respect to police officers, the definition is cast in terms of the employee's age, by

reference to the first day of the month following a particular birthday and without reference to his years of service. See footnote 5, supra. Thus, it is reasonable to read the term "normal retirement date" as synonymous with the term "normal retirement age." This reading is consistent with the language of § 13-41 (e) (2), which couples the use of the phrase "his normal retirement date" with a subsequent reference to the length of years of service. It is apparent, therefore, that "normal retirement date" in § 13-41 (e) (2) is used to locate an age of the police officer without reference to his years of service.

Second, where a statute uses a technical term associated with a particular trade or business, that term "should be accorded the meaning which [it] would convey to an informed person in the . . . trade or business." *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 475, 217 A.2d 698 (1968); General Statutes § 1-1. We have not been pointed to any particular meaning of "normal retirement date" in pension parlance, but the synonymous term, "normal retirement age," while not having a universally accepted definition, does have a commonly accepted meaning which it would convey to an informed person in the pension field. "The normal retirement age has traditionally been considered to be the earliest age at which eligible participants are permitted to retire with full benefits." McGill, Fundamentals of Private Pensions, (4th Ed. 1979) p. 113. "Normal retirement age is the lowest age specified in a plan at which the employee has the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement at the full rate for such service set forth in the plan (i.e., without actuarial or similar reduction because of retirement before some later specified date)." Rev. Rul. 71–446, § 2.08, 1971–2 C.B. 187, 188, quoted in McGill, supra, 113 n.1. By these definitions, a police officer's

normal retirement age or date, under § 13-41 (e) (1) of the code, is the first day of the month following his fiftieth birthday. See footnote 7, supra.

Third, article XV.C.1. of the town personnel rules, in effect since June 13, 1978, provides that "[t]he normal retirement age of Police personnel is fifty." Thus, the town, at least since 1978, has been construing its own code as setting a normal retirement age of fifty for police officers, and has been holding out that construction to those officers. This is persuasive evidence of the meaning of the term. *Breen* v. *Department of Liquor Control,* supra, 634.

There is error, the judgment is set aside and the case is remanded with direction to render a judgment declaring that § 13-41 (b) of the Manchester code does not apply to policemen and officers of the police department, that the normal retirement date, under § 13-41 (e) (2) of the code, for a policeman or officer is the first day of the month following his fiftieth birthday, and that he may retire on that date and receive a pension calculated according to that paragraph.

In this opinion the other judges concurred.