SHELBY MUTUAL INSURANCE COMPANY *v.*
DENNIS DELLA GHELFA ET AL.
(2130)

DUPONT, C.P.J., HULL and BORDEN, Js.

Argued December 5, 1984—decision released March 26, 1985

*Marc N. Needelman,* with whom was *Edward Seltzer,* for the appellant-appellee (plaintiff).

*Donald C. Simmons,* with whom was *William A. Conti,* for the appellee-appellant (defendant Zbigniew S. Rozbicki).

*Paul R. Griffin,* for the appellee (named defendant).

BORDEN, J. The principal issue in this appeal[1] is whether the plaintiff, an automobile no-fault insurer which has paid more than $5000 to its insured for his economic loss, as defined in General Statutes § 38-319 (b), is, upon the insured's recovery from a third party tortfeasor, limited to a lien of $5000. The trial court rendered a summary judgment holding that the plaintiff is so limited. As to this principal issue, we find error in that part of the summary judgment limiting the plaintiff's recovery to $5000. We also find error in part on the cross appeal.

The plaintiff's complaint is in two counts. The first count, which is against its insured, Dennis Della Ghelfa, alleges the following facts: As a result of an automobile collision on September 12, 1975, between Della Ghelfa and an automobile owned by Albert A. Seitz, operated by Michael Seitz and insured by Nationwide Insurance Company, the plaintiff paid Della Ghelfa, or for his benefit, $11,989.02 in basic reparations benefits under its automobile insurance policy with him. The plaintiff gave notice to Della Ghelfa and to his attorney, the defendant Zbigniew S. Rozbicki, of its statutory rights of reimbursement under General Statutes § 38-325 (b). On October 4, 1979, Della Ghelfa, represented by Rozbicki, obtained a judgment of $18,000 against the Seitzes which Nationwide paid to Della Ghelfa. The plaintiff claimed reimbursement of the $11,989.02 under General Statutes § 38-325 (b). The second count, which is against Rozbicki, alleges the same facts, and adds that Rozbicki obtained the $18,000 payment and, in violation of the plaintiff's lien under General Statutes § 38-325 (b), wrongfully disbursed the proceeds of it.

[1] This appeal was originally filed in the Appellate Session of the Superior Court. General Statutes § 51-197a (c).

Della Ghelfa filed an answer to the complaint. Rozbicki moved to strike the plaintiff's complaint on the ground that General Statutes § 38-325 (b) did not create a lien against him as Della Ghelfa's attorney. The court, *O'Donnell, J.,* denied the motion. Rozbicki thereupon filed an answer to the complaint. He also filed twenty-two separate special defenses.

The plaintiff moved to strike all twenty-two of Rozbicki's special defenses, asserting that none of them stated a legally sufficient ground to defeat its claim. The court, *Aspell, J.,* granted the plaintiff's motion to strike as to twenty-one of the twenty-two special defenses; it denied it only as to the eighth special defense, which asserts that the lien created by General Statutes § 38-325 (b) is limited to $5000. The court reasoned that, because it could not at that point conclude that this defense was insufficient to defeat that part of the plaintiff's claim in excess of $5000, the motion to strike should be denied as to that special defense.

The plaintiff thereupon moved for summary judgment in the amount of $11,989.02 against both Della Ghelfa and Rozbicki, supplying affidavits and documents in support of all the facts alleged in its complaint. Rozbicki filed an objection to the motion, but filed no affidavit or other document in opposition to it. Della Ghelfa filed nothing in response to the motion. The court, *Satter, J.,* granted the plaintiff's motion for summary judgment against both Della Ghelfa and Rozbicki in the amount of $5000 only. The plaintiff appealed, claiming that the court erred in limiting its recovery to $5000. Rozbicki cross appealed, claiming error in the denial of his motion to strike the plaintiff's complaint, in the granting of the plaintiff's motion to strike all but one of his twenty-two special defenses, and in the granting of the plaintiff's motion for summary judgment.

# I

## The Appeal

The plaintiff's appeal requires us to consider the relationship among several sections of our No-Fault Motor Vehicle Insurance Act (the act). General Statutes §§ 38-319 through 38-351. These are §§ 38-319 (k),[2] 38-320 (a)[3] and (d),[4] 38-325 (b),[5] and 38-330.[6]

[2] General Statutes § 38-319 (k) provides: " 'Basic reparations benefits' are benefits reimbursing persons suffering economic loss through injury arising out of the ownership, maintenance or use of a private passenger motor vehicle as provided in this chapter."

[3] General Statutes § 38-320 (a) provides: "The owner's insurer is liable to pay, without regard to fault, basic reparations benefits under a uniform separately identifiable coverage of five thousand dollars per person per accident for economic loss resulting from injury arising out of the ownership, maintenance or use of a private passenger motor vehicle, subject to the provisions of this chapter."

[4] General Statutes § 38-320 (d) provides: "The maximum amount of basic reparations benefits payable for all economic loss resulting from injury to any one person as the result of any one accident shall not exceed five thousand dollars per person regardless of the number of insurers involved. If two or more insurers are liable to pay benefits for such an injury, any insurer paying the benefits due shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim."

[5] General Statutes (Rev. to 1979) § 38-325 (b), as it existed at the time of the facts of this case, provided: "Whenever a person who receives basic reparations benefits for an injury recovers damages from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under this chapter or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid and the insurer shall have a lien on the claimant's recovery to such extent."

This section has since been amended. One of those amendments, discussed infra, deals with some of the issues raised by Rozbicki's cross appeal but is not retroactively applicable to this case. See *Norfolk & Dedham Mutual Fire Ins. Co.* v. *Sagnella*, 37 Conn. Sup. 806, 437 A.2d 150 (1981).

[6] General Statutes § 38-330 provides: "Basic reparations insurers may offer optional added reparations coverages providing other benefits as compensation for injury or harm arising from the ownership, maintenance or use of a private passenger motor vehicle, including loss excluded by limits on funeral and burial expenses, and loss excluded by limits on work loss

The trial court, *Satter, J.,* held, as the defendants urge us to hold, that the phrase "basic reparations benefits," as used in § 38-325 (b), is limited to a maximum of $5000, by virtue of § 38-320 (a) and (d), and that any benefits paid by an insurer beyond that amount are "added reparations . . . benefits" under § 38-330, which are not recoverable by the insurer under § 38-325 (b). The plaintiff argues that those benefits are not limited by the dollar amounts contained in § 38-320 (a) and (d) and are fully recoverable under § 38-325 (b). Although the defendants' argument has some appeal based solely on the language of §§ 38-320 (a) and (d) and 38-330, we agree with the plaintiff. On the basis of the language of the various statutory sections, the history and purposes of the act, and the way in which the phrase "basic reparations benefits" is used throughout the act, we hold that where the insurer has paid benefits for economic loss in excess of $5000 pursuant to increased coverage which it was required to provide by a regulation of the insurance commissioner, the entire amount of those benefits paid constitutes "basic reparations benefits" and is subject to the reimbursement and lien rights created by § 38-325 (b).

## A

"The objective of statutory construction is to give effect to the intended purpose of the legislature." *State v. Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). Although it is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary; *Manchester* v. *Manchester Police Union,*

and survivor's loss. The insurance commissioner may adopt rules requiring that specific optional added reparations coverages be offered by insurers writing basic reparations insurance. Added reparations coverages are not limited to injuries occurring within this state, but may be limited to injuries occurring within the United States of America, its territories and possessions and Canada."

3 Conn. App. 1, 6, 484 A.2d 455 (1984); that axiom only applies in full force "[w]here . . . the language of a statute is . . . *absolutely* clear" on its face and where no ambiguity is disclosed by reference to its background. (Emphasis in original.) *Anderson* v. *Ludgin,* 175 Conn. 545, 552-54, 400 A.2d 712 (1978). Where such absolute clarity is lacking and such an ambiguity is disclosed, the court must look to the language of the statute, its history, purpose, objective and underlying policy. Id. What appears to be clear statutory language should not be read to arrive at an "ambiguous or unreasonable result" or to "defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose." *State* v. *Delafose,* supra, 522. Statutes should be considered as a whole, reconciling their separate parts so that a reasonable overall interpretation is achieved. *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984). Furthermore, the meaning of a particular phrase in a statute is to be determined by reference to the use of that phrase in other parts of the same statute. *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 57, 392 A.2d 491 (1978); Sutherland, Statutory Construction (4th Ed.) § 46.05. A meaning should not be ascribed to it which would render the meaning of those other uses difficult or bizarre; *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980); *Connecticut Natural Gas Corporation* v. *DPUC,* 1 Conn. App. 1, 4, 467 A.2d 679 (1983); and it must be construed with common sense. *State* v. *Privitera,* 1 Conn. App. 709, 721, 476 A.2d 605 (1984).

Here, that absolute clarity is lacking and that ambiguity is disclosed. Although § 38-320 (a) and (d) appear on their face to limit basic reparations benefits to $5000, and although § 38-330 on its face draws a distinction between basic reparations benefits and added reparations benefits, neither the definition of basic reparations benefits; see § 38-319 (k), footnote 2, supra; nor

the reimbursement mechanism of § 38-325 (b); see footnote 5, supra; contains such a monetary limitation. The definition is cast in terms of the kind of coverage, not its amount. Likewise, § 38-325 (b) provides for reimbursement "to the extent that . . . basic reparations benefits have been paid. . . ." We cannot conclude, as the defendants would have us do, that where the insurer has paid benefits for economic loss beyond that amount, the question of whether basic reparations benefits is limited to $5000 can confidently be answered solely by examining the language of §§ 38-320 (a) and (d) and 38-330, and by ignoring the other language of the act, its history, purpose, and objective. We turn, therefore, to those other sources of enlightenment.

## B

It is useful to begin with the legislative history of the act, including the subsequent regulatory action of the insurance commissioner in implementing it.[7] There is no question that, when it was enacted in 1972, as Public Acts 1972, No. 273, the act provided only for a package of basic reparations benefits of $5000. This is clear, not only from its language but from a perusal of its legislative history. See generally 15 H. R. Proc., Pt. 5, 1972 Sess., pp. 1843–53 (remarks of Rep. Carrozzella); 15 S. Proc., Pt. 5, 1972 Sess., pp. 2143–49, 2161 (remarks of Sen. Jackson). At that time, then, the statute contemplated basic reparations benefits of no more than $5000; that amount was all that insurers were obligated to provide and all that was available to insureds.

---

[7] The social problems leading to the act and its approach to the solutions of those problems have been previously outlined and need not be repeated here. See *Gentile* v. *Altermatt,* 169 Conn. 267, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Hartford Accident & Indemnity Co. v. Holder,* 37 Conn. Sup. 723, 436 A.2d 308 (1981).

Contained within the act, however, was what is now § 38-330. See footnote 6, supra. That section looked to the future of the act and the solutions it offered, by providing that insurers may offer added reparations benefits, including coverage of losses otherwise excluded by the statutory limits on such items as funeral and burial expenses, work loss and survivor's benefits, and by giving the insurance commissioner specific power to "adopt rules requiring *that specific optional added reparations coverages be offered by insurers writing basic reparations insurance.*" (Emphasis added.) Comparison of this section with the proposals advanced by Professors Keeton and O'Connell, in the seminal published work on this subject which served as the basic working model for this and other acts throughout the nation; *Gentile* v. *Altermatt,* 169 Conn. 267, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct 763, 46 L. Ed. 2d 631 (1976); *Hartford Accident & Indemnity Co.* v. *Holder,* 37 Conn. Sup. 723, 436 A.2d 308 (1981); makes clear that the theoretical source of this section was what Keeton and O'Connell also called "added protection benefits," and that those benefits were contemplated to include coverage in increased amounts beyond the standard minimum limits provided by the no-fault statute. Keeton & O'Connell, Basic Protection for the Traffic Victim pp. 8, 311, 422.

Consistent with § 38-330, effective October 16, 1973, the commissioner adopted § 38-330-1 of the regulations of Connecticut state agencies. That regulation, which has the force of a statute; *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 473, 370 A.2d 1011 (1976); required insurers writing basic reparations insurance to offer optional increased amounts of coverages of $10,000, $15,000 and $25,000 as basic reparations and added reparations. The regulation ambiguously refers to such

coverage in both ways. See Regs., Conn. State Agencies § 38-330-1. It is undisputed that this regulation required the plaintiff to offer to Della Ghelfa the increased coverage which he purchased, and under which the plaintiff paid him $11,989.02. Thus, the plaintiff paid Della Ghelfa benefits of a kind defined by § 38-319 (k), in an amount in excess of the limit stated in § 38-320 (a) and (d), but that excess was required by the regulation which had statutory force. *Roy* v. *Centennial Ins. Co.,* supra.

## C

"The basic purposes of the act are to guarantee prompt payment of benefits to injured covered parties; to reduce insurance premiums and increase efficiency in the reparations system; to improve on the fault system's reliance on litigation based on fault under which large claims were underpaid and minor claims overpaid; to reduce extreme pressure on court dockets; to provide that insurers provide coverage at reasonable rates; and to reduce unreasonably high insurance premium levels and pass on to the consumer the benefits of increased administrative efficiency provided by the no-fault system. *Gentile* v. *Altermatt,* 169 Conn. 267, 290–92, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). See generally, Keeton & O'Connell, Basic Protection for the Traffic Victim, A Blueprint for Reforming Automobile Insurance." *Hartford Accident & Indemnity Co.* v. *Holder,* supra, 731. A critical part of the act, flowing from its purposes of guaranteeing prompt payment of claims and increasing efficiency in the reparations system, is the requirement of periodic and prompt payments to insureds as their losses occur. Keeton & O'Connell, supra, 6–7. Another critical part of the act, flowing from its purpose to reduce insurance premiums,

is that provision limiting recovery to net economic loss by subtracting benefits from certain other sources. Id., 7–8, 400–401.

D

With these purposes in mind, we examine the use of the term, "basic reparations benefits," in other parts of the act. That examination convinces us that basic reparations benefits include, not only the first $5000 of coverage, but the excess coverage provided under the regulation as well. This construction of "basic reparations benefits," which enables the insurer to recover, in appropriate cases, the full amount of the benefits paid, would be consistent with the basic purposes of the act. To hold otherwise would be to frustrate important purposes of the act and to render the meaning of those other uses difficult, bizarre or lacking in common sense.

Sections 38-333 (a) and (b) and 38-334 (a) effectuate the purpose of guaranteeing prompt and periodic payment of claims as losses occur, thus increasing the efficiency of the reparations systems. These sections, in general, require that "[b]asic reparations benefits are payable as economic loss accrues" and must be paid within fifteen days thereafter; General Statutes § 38-333 (a); that overdue payments bear interest at 12 percent per year; General Statutes § 38-333 (b); and that an insured may recover attorney's fees if he sues the insurer for overdue benefits. General Statutes § 38-334 (a). The defendants' position, that "basic reparations benefits" only refers to the first $5000 of benefits paid, would mean that those rights of the insured and obligations of the insurer would not apply to cases, like this one, where the insured's losses are heavy. This would, in turn, frustrate those basic purposes of the act in those serious cases where the insured had anticipated a need for and purchased increased coverage.

Likewise, § 38-333 (c) effectuates the purpose of reducing insurance premiums, by eliminating certain overlapping benefits from other sources. It provides that "[i]n determining the amount of basic reparations benefits payable for economic loss," workers' compensation and Medicare benefits "shall be deducted from the amount otherwise payable." This purpose would be frustrated to the extent that these other benefits were not deducted from the amount of the basic reparations benefits payable beyond the first $5000.

Furthermore, § 38-321 is that part of the act defining the set of root obligations of the insurer to "pay basic reparations benefits," and the root limitations on those obligations.[8] It would lead to difficult and bizarre results, and defy common sense, if those obligations and limitations only apply to the first $5000 of coverage and not to the excess, sold by the insurer and purchased by the insured for the same purposes as those served by the first $5000.

---

[8] General Statutes § 38-321 provides: "(a) Except as otherwise provided in this section, the insurer of the owner of a private passenger motor vehicle shall pay basic reparations benefits for injury sustained by (1) a basic reparations insured while occupying any private passenger motor vehicle or while a pedestrian injured by physical contact with a motor vehicle of any type, or (2) any other person while occupying the owner's private passenger motor vehicle or while a pedestrian injured by physical contact with such vehicle.

"(b) The insurer of the owner is not liable to pay such benefits for injury sustained by any other person who is himself the owner of a motor vehicle with respect to which security is required under this chapter.

"(c) The insurer of the owner is not liable to pay such benefits to a pedestrian other than a basic reparations insured if the accident occurs outside this state, or to any person otherwise entitled to benefits if the accident occurs outside the United States of America, its territories or possessions or Canada.

"(d) The insurer of the owner is not liable to pay such benefits to a person other than a basic reparations insured to the extent that he is entitled to direct benefits without regard to fault for economic loss from the insurer of any other motor vehicle."

Finally, we note that "basic reparations benefits" reimburses persons for "economic loss." General Statutes § 38-319 (k). "Economic loss" includes loss, resulting from the insured's death, defined as "survivor's loss," incurred by the insured's "dependent survivors." General Statutes § 38-319 (b). The "dependent survivors" are statutorily defined as the surviving spouse living in his household and others qualified as dependents for federal income tax purposes. Id. These survivors are not necessarily congruent with those who would take from the insured's estate, either by intestacy or under his will. It would make little statutory sense for the legislature to have meant that only the first $5000 of benefits purchased by the insured would be payable under the act to his dependent survivors. Cf. General Statutes §§ 38-322, 38-328 (c), 38-337 and 38-343 (other sections which would, if interpreted as the defendants urge, be rendered difficult, bizarre or lacking in common sense).

## II

### THE CROSS APPEAL

### A

In his cross appeal, Rozbicki[9] first claims that the trial court erred in denying his motion to strike the second count of the plaintiff's complaint.[10] We agree with the

---

[9] Della Ghelfa did not raise in the trial court the claims on which Rozbicki's cross appeal is based, nor did he join in the cross appeal. Thus, the benefits and burdens of our rulings on these issues inure only to Rozbicki.

[10] We reject the plaintiff's initial procedural argument that Rozbicki waived the right to raise this claim on appeal by pleading in response to the complaint after the denial of his motion to strike. The plaintiff confuses the waiver which takes place when a party pleads over after his pleading has been stricken; see Practice Book § 157; *Royce* v. *Westport*, 183 Conn. 177, 178-79, 439 A.2d 298 (1981); with the situation here where, after his motion to strike the second count was denied, Rozbicki was required to plead in response to it by Practice Book § 112.

trial court that the allegations of the second count, taken favorably to the plaintiff and considered in the light of the facts provable under them; *Amodio* v. *Cunningham,* 182 Conn. 80, 82–83, 438 A.2d 6 (1980); state causes of action both for violation of the plaintiff's lien rights and conversion by Rozbicki. In doing so, we agree, as did the trial court, with the reasoning of the Appellate Session of the Superior Court in *Unigard Ins. Co.* v. *Tremont,* 37 Conn. Sup. 596, 430 A.2d 30 (1981).

The legislature has since amended § 38-325 (b) to provide that "no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant." Public Acts 1981, No. 81-386; General Statutes (Rev. to 1983) § 38-325 (b). That amendment, however, is not retroactive to the facts of this case. See footnote 5, supra.

The fact that Rozbicki may have personally benefited only from that part of the proceeds of the recovery equal to his fee does not affect this result. By improperly disbursing the funds, thus violating the plaintiff's rights to their entirety and assisting in the conversion of their entirety, he became jointly and severally liable for that entirety. See *Lamb* v. *Peck,* 183 Conn. 470, 472, 441 A.2d 14 (1981).

B

Rozbicki next claims that the trial court erred in striking all but one of his twenty-two special defenses. Before addressing this claim, we are constrained to note our agreement with the trial court, which "consider[ed] the filing of 22 special defenses frivolous pleadings since only one appears to have been legitimate. As is evident . . . an inordinate amount of time has been consumed by the court in connection with the analysis of all these defenses. A lesson in succinct[ness] in pleading appears to be in order." Indeed, on appeal

Rozbicki was able to discuss all of these defenses in his brief in ten, rather than twenty-two, groups. It was incumbent on him to think about them before, rather than after, pleading them, so as to avoid undue attention both from his adversary and the court. His counsel would have been well-advised to keep in mind the requirement that "[e]ach pleading shall contain a *plain and concise* statement of the material facts on which the pleading relies" (emphasis added); Practice Book § 108; and the admonition of DR 7-102 (A) (1) of the Code of Professional Responsibility that, "[i]n his representation of a client, a lawyer shall not . . . assert a position, conduct a defense, . . . or take other action on behalf of his client when . . . it is obvious that such action would serve merely to harass . . . another." See also *State* v. *Anonymous (1974-5)*, 31 Conn. Sup. 179, 181, 326 A.2d 837 (1974) (Code of Professional Responsibility bears on the limits to which counsel may wander in his presentation of his client's position).

Rozbicki's eighth special defense, which asserts that the plaintiff's reimbursement rights are limited to $5000, was sustained by the trial court's ruling on the plaintiff's motion for summary judgment. Thus, that ruling was part of the plaintiff's appeal, and is not properly part of Rozbicki's cross appeal. We therefore confine our discussion here to Rozbicki's remaining twenty-one special defenses. Although in his brief he narrowed these twenty-one into nine groups, exclusive of the eighth special defense, we find that they fall into five groups.[11]

---

[11] We reject the plaintiff's procedural argument here that Rozbicki waived his right to challenge the granting of the plaintiff's motion to strike his special defenses, by failing to file a notice of appeal under Practice Book § 3001. That section gives a party the option to forego an immediate appeal and reserve his appeal, "until the final judgment is rendered which disposes of the cause for all purposes and as respects all parties . . ." in cases in which there is "[a] judgment disposing of certain of the issues between the parties or of part or all of the issues between some of them *in such a man-*

## 1

Rozbicki's nineteenth special defense asserts that the plaintiff waived any lien rights it may have had against him by virtue of a certain letter to him in which it elected to seek satisfaction of its lien from Della Ghelfa, by failing to make demand on him, by failing to give him notice that it sought to enforce its lien against him personally, and by failing to enforce its claim before he and Della Ghelfa cashed the Nationwide draft payable to them. Waiver is a question of fact for the trier. *Loda* v. *H.K. Sargeant & Assoc., Inc.,* 188 Conn. 69, 76, 448 A.2d 812 (1982). It was error for the court to conclude that these allegations could not amount to a special defense.

While we note that the material adduced by the plaintiff on its motion for summary judgment casts some doubt on whether Rozbicki could factually sustain this special defense, we also note that at that point of the proceedings this special defense had been ruled out of the case. Thus, Rozbicki was unable to present whatever other material he might have in support of this special defense.

## 2

Rozbicki's seventeenth and eighteenth special defenses assert, respectively, that the plaintiff was guilty of laches and that it waived its lien rights, by failing to impose its lien against Nationwide. The trial court did not err in striking these special defenses.

Although both waiver and laches are questions of fact, it is clear that the common legal basis of these

---

*ner as to be final* but not terminating the litigation . . . ." (Emphasis added.) The granting of a motion to strike a special defense is not a "judgment disposing of certain of the issues . . . in such a manner as to be final . . . . " *Breen* v. *Phelps,* 186 Conn. 86, 90, 439 A.2d 1066 (1982). Thus, Practice Book § 3001 is inapplicable.

special defenses is that the plaintiff could have, but did not, collect on its lien rights from Nationwide. We find nothing in § 38-325 (b), as then in effect, to support this claim. See footnote 5, supra. Until the proceeds of the judgment were actually paid to Della Ghelfa and Rozbicki, his attorney and agent, it cannot be said that he had "recover[ed] damages," that the plaintiff was entitled to reimbursement "from the claimant," or that there was any "claimant's recovery" on which a lien could be impressed. § 38-325 (b). Thus, the plaintiff had no basis to support a claim against Nationwide.

### 3

The ninth special defense asserts that the plaintiff has no right to reimbursement from the recovery from the Seitzes because such right is contrary to the public policy and state law prohibiting assignment of interests in personal injury claims. The short answer to this is that § 38-325 (b) has, in those cases covered by its terms, clearly declared this state's law and public policy in favor of such reimbursement. See *Hartford Accident & Indemnity Co.* v. *Holder,* supra.

### 4

The twentieth, twenty-first and twenty-second special defenses raise various vaguely asserted constitutional claims, based on federal and state due process and equal protection grounds, none of which has merit. Although the allegations are largely conclusory and thus unilluminating, we glean from Rozbicki's brief that their thrust is that the lien rights created by § 38-325 (b) run afoul of the due process notice and hearing rights articulated in *Kukanskis* v. *Griffith,* 180 Conn. 501, 430 A.2d 21 (1980), and *Roundhouse Construction Corporation v. Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46

L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976).

The short answer to this claim of Rozbicki is that he has no standing to assert it. It is axiomatic that due process rights are personal, and cannot be asserted vicariously. *Shaskan* v. *Waltham Industries Corporation*, 168 Conn. 43, 49, 357 A.2d 472 (1975); see *Silverman* v. *St. Joseph's Hospital*, 168 Conn. 160, 175–77, 363 A.2d 22 (1975). If there is to be an adjudication as to whether § 38-325 (b) unconstitutionally imposes a lien against someone's recovery of damages, that claim must be made by the person entitled to that recovery. The recovery here belonged to Della Ghelfa, not Rozbicki. Rozbicki's liability to the plaintiff was as Della Ghelfa's attorney and agent, and as a joint tortfeasor, not as Della Ghelfa's alter ego owner of the fund. Thus the trial court did not err in striking these special defenses of Rozbicki.

5

The remaining fourteen special defenses, namely the first through seventh and tenth through sixteenth, all assert in various ways the basic claim that, because Rozbicki was Della Ghelfa's attorney, he had no duty or authority to avoid disbursing the proceeds of the judgment. It would serve little purpose to discuss these various claims at length. Suffice it to say that we conclude that they are all disposed of by the reasoning of *Unigard Ins. Co.* v. *Tremont*, 37 Conn. Sup. 596, 430 A.2d 30 (1981), which we have already indicated we adopt.

III

CONCLUSION

We have found error in part on the plaintiff's appeal and have determined that the plaintiff's motion for

summary judgment should have been granted to the full extent of its claim. We have also, however, found error in part on Rozbicki's cross appeal in that his nineteenth special defense should not have been stricken. If he is successful on remand in establishing that special defense, the judgment for the plaintiff in the amount of $11,989.02 would be precluded. Thus, the only issue left for determination on remand is whether Rozbicki establishes that special defense.

There is error in part on the appeal and on the cross appeal, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff in the amount of $11,989.02 against the defendant Della Ghelfa, and against the defendant Rozbicki unless he establishes his nineteenth special defense in a hearing limited to that issue.

In this opinion the other judges concurred.