SOLOMON CANTOR *v.* STATE BOARD OF ELECTRICAL EXAMINERS
(2068)

DUPONT, C.P.J., BORDEN and SPALLONE, Js.

Argued February 5—decision released May 7, 1985

*Robert T. Statchen,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*David F. Waters,* for the appellee (plaintiff).

BORDEN, J. This is an appeal[1] from the judgment of the trial court reversing the decision of the defendant board of electrical examiners to suspend the contractor's license of the plaintiff for one year.

After a hearing on November 18, 1981, the board found the following facts: On April 7, 1981, Craig Trask and Bruce Trask were employed by the plaintiff as electrical workers. Neither Craig nor Bruce was licensed by the board to do electrical work but each was registered with the board as an apprentice. Both Craig and Bruce were working under the direct supervision and in the presence of a licensed contractor or journeyman as required for the employment of apprentices under a board-promulgated regulation. Regs., Conn. State Agencies § 20-332-15.

Craig completed his four year apprenticeship on June 25, 1976, enabling him to be examined for a journeyman's license at that time; General Statutes § 20-334a (a) (2) (A); but he did not take the examination until December 12, 1980. He failed that examination and had not reapplied to take another.

Bruce completed his apprenticeship on March 4, 1978, but did not take an examination until November 13, 1980. He failed that examination and was scheduled to take another on April 20, 1981.

The board found that on April 7, 1981, the plaintiff had violated General Statutes § 20-338a by "failing to cause electrical work to be performed by licensed persons," and General Statutes § 20-341 by "wilfully employing persons who do not have a license to perform electrical work." The board suspended the plaintiff's license for one year from March 1, 1982. General Statutes § 20-334.

---

[1] This appeal was originally filed in the Appellate Session of the Superior Court. General Statutes § 51-197a (c).

The plaintiff appealed to the Superior Court on a number of grounds. See General Statutes § 4-183. The court set aside the board's decision, holding that under the then governing statutes and regulations, Craig Trask and Bruce Trask were apprentices and that their employment as apprentices was not prohibited by statute. The board appealed. We find no error.

The board suggests that apprentices[2] were required to be licensed within one year of completing the practical component of their apprenticeships and that the employment of persons who had completed the four year component but who had not successfully taken a licensure examination was unlawful. The statutes governing at the time demonstrate, to the contrary, that those in this position were still apprentices and could be employed as apprentices within regulated limits.

General Statutes (Rev. to 1981) § 20-334a (a) (2) (A) stated the minimum requirements for an applicant for a journeyman's license: "An unlimited journeyman's license may be issued to any person who has completed a bona fide apprenticeship program, has *not less than four years experience* in the trade for which he seeks a license, and has demonstrated his competency to perform all services included in the trade for which a license is sought . . . ." (Emphasis added.) General Statutes (Rev. to 1981) § 20-333 explained that an apprentice who is a candidate for a journeyman's license who fails that examination three successive times may not take the examination for at least one year from the date of the last examination.[3]

---

[2] Apprentices are defined as "anyone indentured to the Connecticut state apprentice training division of the labor department or registered with the appropriate state examining board for the purpose of learning a skilled trade." General Statutes § 20-330 (6).

[3] General Statutes (Rev. to 1981) § 20-333, entitled "Examinations," generally provided for the scheduling of examinations by the appropriate licens-

While these statutes are not a model of clarity, they were the only provisions even tangentially addressing the issue of the length of time one could remain an apprentice. Because they are penal in nature, by defining the situations in which a contractor's license might be revoked, and by providing for a fine for violations; General Statutes § 20-341; they must be strictly construed. *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 526, 418 A.2d 883 (1979); *Fitzpatrick's Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 416, 419, 334 A.2d 476 (1973). The words used in these statutes indicate that an apprentice retained his status as an apprentice beyond one year after completing the four year training program even if he or she did not pass the journeyman's examination. If this were not so, the provision of General Statutes § 20-333 requiring apprentices to take the exam one year *after* failing three successive examinations would make no sense. A nonsensical meaning cannot be attributed to the statute; *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 438, 489 A.2d 398 (1985); and the court cannot extend the statute "by implication to create liability which no language of the act purports to create." *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983). The plain meaning of § 20-333 was that one was still employable as an apprentice one year after failing three examinations.

The defendant's reading of § 20-333 to imply a "good faith" standard on the part of the apprentice continuously to retake the exam to show his intent to become licensed is without basis. Nowhere in the applicable statutes was it required that an apprentice take each and every examination, without exception, until he passed in order to remain an apprentice; in fact,

ing boards. The pertinent part of this statute provides as follows: "Any applicant who, for three successive times, fails to pass such an examination may not be examined for at least one year from the date of his last examination."

§ 20-333 *prohibited* an apprentice from taking any of the examinations given for one year if three successive examinations were taken and failed. Nor is there any indication that this general provision, which applies to all applicants for professional licensure examinations, was enacted for the purpose of manifesting the intent to remain an apprentice.

We also cannot disregard the broad term, "not less than four years experience," in § 20-334a (a) (2) (A), as the defendant would have us do. This phrase, construed with common sense and in the context of § 20-333 and the entire regulatory scheme; *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* supra; suggests that one could retain his status beyond the four year training if one continued working in the limited domain of an apprentice and took the examination when he or she felt prepared. The legislative intent of these statutes cannot be distorted to fit into the defendant's idea of when an apprenticeship should end. "The [board's] remedy lies with the General Assembly, not with the court." *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975).

In fact, the legislature did act, providing further evidence of the statutory imbroglio which existed at the time the plaintiff's license was suspended. In 1983, the legislature amended these statutes in an attempt to clarify the ambiguities in question here. Public Acts 1983, No. 83-487 §§ 14, 15, 16. These amendments, although not clearing up all the potential problems, clarified when an apprentice must apply to take the examination, how often an apprentice must take the examination if he does not pass the first examination, and when the status of apprentice expires if examinations are not taken. General Statutes §§ 20-333 (a), 20-334a (a) (2) (A), and 20-334a (a) (5). None of these requirements was expressed in the former statutes; the plaintiff could not be expected to know what was

expected of him without any statutory or regulatory guidance.[4] He could not know in 1981 what the legislature did not attempt to clarify until 1983. The statutes as they existed in 1981 classified the plaintiff's employees as apprentices even though they might not now be so classified. We agree with the trial court, therefore, that these employees were lawfully employed by the plaintiff as apprentices in 1981 under the former statutes and that the plaintiff's license was wrongfully revoked.

There is no error.

In this opinion the other judges concurred.

[4] The extent of the confusion surrounding the issue of whether the plaintiff's employees were legally employable as apprentices is also demonstrated by the evidence, presented to the trial court, that the plaintiff requested that the board interpret these statutes for him at an informal hearing on June 8, 1981, and by a request for a declaratory ruling on June 11, 1981, but no response was ever received. There was also evidence that there was confusion within the department of consumer protection itself and among electrical inspectors regarding these statutes, and the defendant fairly conceded at oral argument before this court that the interpretation urged by the defendant was an unwritten regulation at the time in question. Although we hold that the plaintiff's employees were apprentices under the then governing statutes, we note also that these facts indicate the uncertainty of the definition of an apprentice and the inability of the plaintiff to know if in fact his employees were lawfully employed by him.