[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
Irving William Reisman established a revocable inter vivos trust (the Trust) on September 28, 1990, which was amended on April 12, 1991. It names Bernard Blum and Benjamin Cohen as co-Trustees. The Trust is for the benefit of Mr. Reisman during his lifetime and provides for disbursement of its assets to various charities and relatives upon his death. Mr. Reisman transferred substantial sums of money into the Trust after its creation.
On February 5, 1992, this Court found by clear and convincing evidence that Mr. Reisman was incapable of managing his financial affairs and incapable of caring for himself due to deteriorating cognitive and physical function following a stroke. This Court appointed Attorney John D. Dragat as Conservator of the estate and appointed Dr. Lee Pollack, Mr. Reisman's nephew, as CT Page 14608 Conservator of person. Mr. Reisman resides in the Hebrew Home and Hospital in West Hartford.
Dr. Pollack, who is a beneficiary of his uncle's estate and who may receive under the Trust, petitioned for an accounting of the Trust and for a copy of the Trust agreement. Dr. Pollack has also sought to have the Trust pay an allowance to Mrs. Jeanette Delman, who is Mr. Reisman's sister and an alleged beneficiary of the Trust, so that she could avoid the eventuality of moving to a nursing home. On September 21, 1995, the Court ordered the Trustees to make an accounting of the Trust to the Court pursuant to C.G.S. § 45a-175. The Trustees provided a preliminary version of that accounting to the Court on September 26, 1995, and a final version on December 1, 1995. The Trustees have not yet provided a copy of the Trust instrument to the Court so that an effective audit of the accounting may be done as per C.G.S. § 45a-175 (e). On December 5, 1995, a hearing was conducted regarding the confidentiality of the Trust instrument and Trust accounting. The Trustees object to providing Dr. Pollack with access to the Trust instrument and accounting. They have submitted a brief through counsel arguing their position.
The issues are whether the probate court has jurisdiction over revocable inter vivos trusts, whether the Court may grant the Trustees' request to keep the Trust accounting and the Trust document confidential, and whether the Court's assertion of jurisdiction over an inter vivos trust represents an unconstitutional intrusion into the protected privacy interest of the settlor. The Trustees contend that the legislature intended that § 45a-175 should apply only to irrevocable inter vivos trusts, and therefore the Court does not have jurisdiction over the Trust. The Trustees further contend that even if §45a-175 was meant to apply to revocable inter vivos trusts it is unconstitutional to the extent it does so, as it impinges upon the settlor's constitutionally protected right to privacy. This Court disagrees.
 II
Section 45a-175 grants jurisdiction to the probate court over interim and final accounts of trustees of inter vivos trusts. The jurisdictional grant is explicit and the language of this section is consistent in using the term inter vivos trusts generally and in making no distinction between revocable or irrevocable inter vivos trusts.[1] Where the language of the statute is clear and CT Page 14609 unambiguous, reference to its history and purpose is unnecessary, and it is the duty of the court to interpret the statute as written and not by construction to read into the statute provisions which are not clearly stated. State v. Ross, 230 Conn. 183
(1994). The language of the statute is clear and consistent in its use of the term "inter vivos trusts" alone and in its general sense. This Court believes that the statute refers to all inter vivos trusts, revocable and irrevocable alike.
The Trustees argue that subsection (c)(1) of § 45a-175
creates some ambiguity in the statute as it states that only abeneficiary of an inter vivos trust may petition the probate court for an accounting by the trustees. The Trustees contend that a person who might receive under a revocable inter vivos trust has a mere expectancy interest and not an interest that rises to the level of a beneficiary, and thus the statute could only be referring to irrevocable inter vivos trusts alone. However, subsection (c)(3) defines beneficiary as including a person "who may be entitled to receive income or principal or both from the trust at some future date . . . ." C.G.S. §45a-175 (c)(3) (emphasis added). This definition anticipates the case of a beneficiary who is not fully vested and who has only an expectancy interest. It specifically includes as a beneficiary someone who may take from the trust at some future time. Statutes should be considered as a whole, reconciling their parts so that a reasonable overall interpretation is achieved. Shelby Mut. Ins.Co. v. Della Ghelfa, 3 Conn. App. 432 (1985), affirmed 200 Conn. 630
(1985). Therefore, the inclusive definition of beneficiary from (c)(3) must be read into (c)(1), and the ambiguity the Trustees assert does not arise. It is clear that probate courts have jurisdiction over the accountings of both revocable and irrevocable inter vivos trusts.
The next question is whether the Court has the power to require that a copy of the inter vivos trust instrument be provided to the Court. Subsections (e) and (f) of 45a-175 give the Court the power to audit the trustees' account of the trust and to allow or disallow any such account, and then to determine the rights of the trustees and of the parties interested in the account. In order to make a full and proper audit of a trust account the auditor must know the terms of the trust. Without a copy of the trust agreement at hand the auditor could not determine whether the transactions and other activities reported by the trustees were in accordance with the terms of the trust. To read the statute as not enabling the Court to require a copy CT Page 14610 of the trust document would render the audit provision effectively meaningless. Moreover, the Court would not be able to make the required allowance of the account or determination of the rights of the parties. A statute is to be construed so that all its parts have meaning. Eagle Hill Corp. v. Commission onHospitals and Health Care, 2 Conn. App. 68 (1984). In order to give effect to the provisions in § 45a-175 (e) and (f), they must be read to empower the Court to require the trustees to submit a copy of the trust instrument along with the trust accounting.
 III
The Trustees further contend that, even if § 45a-175 does apply as above, the beneficiary in this case has not met the statutory requirements of subsection (c)(1): that he must have an interest sufficient to entitle him to an account, that there is cause to make an accounting necessary, and that his petition is not for the purpose of harassment. However, the statute does not put the burden on the petitioning beneficiary to prove that these conditions exist. Rather, the statute simply states that an accounting may be required if the Court makes a finding that the three factors are met. These are questions of fact to be determined by the Court. At the hearing on September 21, 1995, the Court heard evidence and found that Dr. Pollack did have a sufficient interest to petition for an accounting, that there was cause for an accounting to be required, and that the petition was not for the purpose of harassment.
 IV
The next issue is whether the accounting and trust document should be kept confidential once they are presented to the Court and are a part of the Court file. As with files of other courts in Connecticut, probate court files and the documents therein are accessible to the public. The reason for this general rule was well summarized by the United States District Court:
 When parties come before the courts as willing claimants seeking redress or as unwilling targets of such claims, they play out a process by which their respective rights and obligations are adjudicated. Their dispute is personal. The adjudicative process, however, is a function of the law which is derived from the community's CT Page 14611 delegation to the courts and to the legislature of the power to establish and enforce the substance of the law. That process is a matter of public concern as the enforcement of the law has a broader impact than just the decision in the dispute of the particular parties. So also the community has a real concern as to the process by which the law is justly enforced. The public's concern is accommodated by the openness of the court's record. By access to the record, the public best insures that the authority it has delegated to the courts and the substantive law enacted under authority delegated by the community are exercised and enforced consistent with the charge to the court implicit in the delegation. City of Hartford v. Chase, 733 F. Sup. 533, 535 (D.Conn. 1990).
Thus, there are strong due process concerns underlying the rule of public access to court files. The court in City of Hartford
noted that the essential question was whether the parties requesting confidentiality had shown interests that outweigh the presumed right of public access and the public's interest in an open process. Id. at 536.
Accordingly, probate court files and the documents therein are accessible to the public, unless there is statutory provision to the contrary. For example, confidentiality is explicitly provided for in § 45a-754 regarding matters involving removal of a parent as guardian, termination of parental rights, or adoption; confidentiality is explicitly provided for in §17a-500 regarding proceedings for the commitment of the mentally ill. There is no such statutory provision for confidentiality of inter vivos trust instruments and trustee accountings or for accountings generally.
The Court might have authority to order that the trust documents and accounting remain confidential through its implied powers under § 45a-98 (a)(6) to make such orders necessary to enable the Court to carry out its statutory functions. The statutory function at issue here is the Court's audit and allowance of the account of the inter vivos trust and then the Court's determination of the rights of the fiduciaries and of the parties interested in the account. The underlying purpose of § 45a-175 is to give beneficiaries a procedure for obtaining CT Page 14612 accountability of the Trustees. If the Court found that confidentiality was required to fulfill the above function, then it could assert its implied powers and order that records be kept confidential. However, in light of the due process concerns outlined above, the probate court must use great care in exercising its implied powers in regards to confidentiality of court records. In this case, the statutory purpose of §45a-175 would not be served by keeping the trust accounting and the trust document confidential. The settlor's privacy interest is not sufficient to outweigh the public's interest in openness and accessibility of probate court files.
It is informative to note that the Superior Court has recently adopted a new Practice Book rule, § 211B, which states that except as otherwise provided by law or by that section, the court shall not exclude the public or seal any of its records. It further states that the court may seal court records "where the court concludes that such order is necessary to preserve an interest which is determined to override the public's interest in attending such proceeding or in viewing such materials." Thus, the Superior Court rule reflects a similar balancing test as outlined in the City of Hartford case and underscores the presumed primacy of the public's interest in having court records accessible.
 V
Finally, the Trustees argue that insofar as § 45a-175 may apply to Inter VIVOS trusts it represents an unconstitutional encroachment on the settlor's right to privacy as protected by Article 1, § 7 of the 1965 Constitution of the State of Connecticut and the Fourteenth Amendment to the U.S. Constitution. Although the settlor of a revocable inter vivos trust certainly has a privacy interest regarding the trust, this is not the sort of privacy interest protected by either Article1, § 7 of the Connecticut Constitution or by theFourteenth Amendment of the U.S. Constitution. Section 7 of Article I of the Connecticut Constitution deals with individual security from searches and seizures. Thus, although it is related to privacy interests of a certain kind it does not protect privacy interests in general. The Trustees have presented no case law, nor can this Court find any, in which our Connecticut Supreme Court has extended the privacy protection of Article 1, § 7 to trusts of any sort or even to any context beyond the criminal context of police search and seizure. CT Page 14613
The U.S. Supreme Court has recognized certain privacy interests as fundamental rights entitled to strict scrutiny analysis. For example, the right to marry, to use contraceptives, and to have an abortion in certain situations have been held by the U.S. Supreme Court to be fundamental rights. The right to privacy as a fundamental right has not been extended to a settlor's interest in an inter vivos trust or to anything of the sort. Therefore, § 45a-175 would only be unconstitutional in its application to inter vivos trusts if it is not rationally related to a legitimate governmental purpose. Section 45a-175 is rationally related to the legitimate governmental purpose of providing beneficiaries with a procedure for probate court review of these trusts, since without such review beneficiaries are at the mercy of trustees and there would be inadequate oversight of trustees' administrations. For the above reasons, this Court holds that § 45a-175 is constitutional as it relates to the privacy interest of the settlor of a revocable inter vivos trust.
It is hereby ordered that the Trustees shall forthwith provide to the Court a copy of the Trust instrument in order for a proper audit of the Trust accounting to be performed. It is further ordered that the Trust accounting and Trust instrument shall not be confidential but shall be placed in the court file and accessible to the public.
BERMAN, J.